IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| **NOVATION COMPANIES, INC.,** *et al.*[1], | * | Case Nos. 16-19745, 19747-19749-DER |
| | * | (Joint Administration Requested) |
| Debtors. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a), 362(a)(3) AND 541 OF THE BANKRUPTCY CODE (A) LIMITING CERTAIN TRANSFERS OF CLAIMS AGAINST THE DEBTORS AND (B) APPROVING RELATED NOTICE PROCEDURES**

Novation Companies, Inc., *et al.*, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") by counsel, file this Motion for Entry of an Order Pursuant to Sections 105(a), 362(a)(3) and 541 of the Bankruptcy Code (A) Limiting Certain Transfers of Claims Against the Debtors and (B) Approving Related Notice Procedures (the "Motion"), and in support thereof state:

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105(a), 362(a)(3) and 541 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The Debtors in these chapter 11 cases are: (i) Novation Companies, Inc. f/k/a NovaStar Financial, Inc., (ii) NovaStar Mortgage LLC f/k/a NovaStar Mortgage, Inc., (iii) NovaStar Mortgage Funding Corporation and (iv) 2114 Central, LLC f/k/a Advent Financial Services, LLC.

**Background**

3. On the date hereof (the "Petition Date"), each of the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no committees have been appointed or designated. Contemporaneously herewith, the Debtors requested an order for the joint administration of the Reorganization Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. A description of the Debtors' business and the reasons for filing these chapter 11 cases is set forth in the Declaration of Rodney Schwatken, CEO of Novation Companies, Inc., *et al*. in Support of the First Day Motions (the "First Day Declaration"), which was filed on the Petition Date and is incorporated herein by reference.[2]

5. As set forth in the Form 10-Q filed by Novation Companies, Inc. on May 16, 2016, as of March 31, 2016, the Debtors' consolidated books and records reflected assets totaling approximately $31.2 million and liabilities totaling approximately $92.8 million.

6. In addition to the foregoing assets, the Debtors also have significant net operating losses which constitute a significant asset that can and will be instrumental in their reorganization efforts. Therefore, as more fully set forth herein, the Debtors seek specific relief

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the First Day Declaration.

from the Court to protect and maintain those net operating losses during the pendency of these reorganization cases.[3]

## The Debtors' Net Operating Losses (the "NOLs")

7. As more fully described above, the Debtors have had significant operating losses in the recent past. Since calendar tax year 2005, the Debtors have not incurred significant federal income tax liability and in fact have incurred substantial net operating losses and net built-in losses on certain mortgage securities (collectively, the "NOLs").[4] The Debtors' NOLs are an extremely valuable asset because under the Internal Revenue Code (the "IRC"), the Debtors can carry forward their NOLs to offset their future taxable income for up to twenty (20) taxable years and thereby reduce their future aggregate tax obligations.[5]

8. The Debtors' NOLs are currently estimated to be approximately $728 million, which, based on the applicable 35% Federal corporate tax rate now in effect, represent approximately $254.8 million in potential tax savings to be utilized in future years. The NOLs consist of (i) approximately $370 million in losses incurred in 2005, 2007-13 and 2015 and (ii) approximately $355 million in unrealized losses that have not yet been recognized. These tax savings -- and the accompanying increase in the Debtors' cash flow -- will greatly facilitate the Debtors' successful reorganization. As one bankruptcy court has recognized, "[W]hat is certain is that the NOL has a potential value, as yet undetermined, which will be of benefit to creditors and will assist [the debtors] in their reorganization process. This asset is entitled

---

[3] The tailored relief sought herein adheres to the procedure previously approved by this Court in the case of *In re The Boyds Collection, Ltd., et al*, Case No. 05-43793-DWK [Dkt. No. 106, November 2, 2005].

[4] NOLs can be used as either "carrybacks" (where the corporation uses the NOLs to offset taxable income for up to two previous taxable years) or "carry overs" to offset taxable income for up to twenty taxable years into the future).

[5] *See* 26 U.S.C. § 172.

to protection while [the debtors] move forward toward their reorganization." *See In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993).

9. A corporation's ability to use its NOLs may be reduced under certain circumstances[6]. This Motion focuses on one of those circumstances, namely the transfer of Claims against the Debtors. The Debtors organization documents already contain protections and limitations for purchases and sale of equity securities, thus mitigating the need to approve procedures to limit such equity transfers. In this regard:

> (a) <u>If the Corporation Experiences an "Ownership Change."</u> A corporation that undergoes an "ownership change" may be limited in the amount of NOLs that it can offset against its taxable income.[7] Pursuant to IRC Section 382(g), an "ownership change" occurs if, immediately after a "testing date," and as measured during a rolling 3-year "testing period,"[8] the percentage of the corporation's stock (measured by value) held by certain significant shareholders (*i.e.*, shareholders owning 5% or more) or claims converted to stock under a plan of reorganization increases by 50 percentage points or more.
>
> (b) <u>"Changes of Ownership" When Debt Is Converted to Stock Under a Chapter 11 Plan</u>. If a debtor's chapter 11 plan of reorganization provides for creditors to receive stock in the reorganized debtor's business, a "change of ownership" may occur that may limit the amount of NOLs that can be offset against income. However, if the debtor's

---

[6] *See* 26 U.S.C. §§ 269, 381, 382, 383 and 384.

[7] In general, under IRC § 382, if a corporation undergoes an "ownership change," the amount of NOLs that the corporation can use in any given year to reduce its taxable income is limited to an amount equal to (a) the value of the corporation's equity on the date that the "ownership change" occurs multiplied by (b) the tax-exempt bond rate on that date. Currently, the tax-exempt bond rate is approximately 2.5%. As a result, hypothetically, if a debtor's equity had a total market value of $100 million on a date that an "ownership change" occurred, the amount of NOLs that the corporation could use to offset its taxable income would be limited to approximately $2.5 million per year (*i.e.*, $100 million x 2.5%). If the debtor later had $50 million of taxable income in a future year, it would be able to offset $2.5 million of such taxable income, but would have to pay tax on the remaining $47.5 million. Because the Debtors have approximately $728 million of NOLs but negligible equity value, an ownership change would effectively eliminate the Debtors' ability to use NOLs to offset future taxable income.

[8] Generally, a "testing date" occurs when there is a change in the percentage of stock owned by a 5% shareholder before or after the change, or when an option to purchase the stock of the corporation is granted by the corporation. The "testing period" generally consists of the 3-year period prior to any testing date.

shareholders and/or "Qualified Creditors"[9] own at least 50% of the value and voting power of the debtor's stock after reorganization, the Debtor's NOLs will be preserved despite the "ownership change.[10]

10. Once all or part of a NOL is disallowed under IRC Section 382, its use is limited forever, and once a claim or equity interest is transferred, the transfer generally cannot be nullified. Thus, unrestricted transfers claims against the Debtors could hinder the Debtors' reorganization efforts by causing them to lose their ability to use NOLs to offset future taxable income.

11. Because of the significant potential tax savings (approximately $254.8 million to be utilized over future years) that will be lost if an "ownership change" occurs, it is necessary to restrict the trading of the claims against the Debtors to facilitate a successful restructuring.

---

[9] Under IRC § 382(l)(5), a creditor whose debt is being converted into stock pursuant to a chapter 11 plan is a "Qualified Creditor" if either: (a) the claim has been owned by the same beneficial owner since 18 months before the commencement of the bankruptcy case, or (b) the claim arose in the ordinary course of the Debtors' business and has been owned at all times by the same beneficial owner. Examples of ordinary course debt include trade debt; a liability arising from a past or present employment relationship; and a past or present business relationship with a customer, supplier or competitor. See Treas. Reg. § 1.382-9(d)(2)(iv). A creditor who receives stock under the Debtors' chapter 11 plan of reorganization may also be a "Qualified Creditor" if it ultimately owns less than 5% of the reorganized debtor to being able to satisfy the continuous ownership requirements. This is termed the "De Minimis Rule." Treas. Reg. § 1.382-9(d)(3)

[10] See 26 U.S.C. § 382(l)(5)(A). A corporation that has not previously had an ownership change is not subject to the limitations imposed by IRC § 382 with respect to an ownership change resulting from the consummation of a chapter 11 plan of reorganization, provided that under the plan the debtor's pre-ownership change shareholders (i.e. persons who owned the debtor's equity immediately before the relevant ownership change) and/or "Qualified Creditors" emerge from the reorganization owning at least 50% of the total value and voting power of the debtor's stock immediately after the ownership change. This is termed the "Safe Harbor." Although there can be no assurance that the Safe Harbor ultimately will be available to the Debtors, it is important that the Debtors preserve their ability to propose a plan or reorganization that could take advantage of the Safe Harbor. Because the status of a creditor as "qualified" depends on whether such creditor has held its claim until the effective date of a plan of reorganization, transfers of claims by creditors before such date pose a threat to the Debtors' ability to satisfy the requirements of the Safe Harbor. The requested relief will ensure that the Debtors have maximum flexibility to structure a plan of reorganization that meets the requirements of the Safe Harbor, and thus preserves their NOLs to the fullest extent.

**Relief Requested**

12. By this Motion, the Debtors request that this Court implement a multi-step process to initially maintain the status quo pending full consideration of all relief requested herein, which will include a further order that a notice and waiting period govern certain significant transfers of claims against the Debtors. This notice procedure will provide the Debtors with advance notice of certain transfers that may jeopardize their NOLs, and will enable the Debtors, if necessary, to obtain substantive relief from this Court to protect their NOLs.

13. The ultimate relief requested in this Motion will enable Debtors to closely monitor certain transfers claims, and ensure that the Debtors are in a position to act expeditiously to prevent such transfers if necessary, and thus allow the Debtors to protect and preserve their NOLs.

14. Therefore, as a threshold matter the Debtors request that the Court enter an Order Granting Motion For Entry Of An Order Pursuant to Sections 105(a), 362(a)(3) and 541 of the Bankruptcy Code (A) Limiting Certain Transfers of Claims Against the Debtors and (B) Approving Related Notice Procedures, a form of which is submitted herewith. This preliminary order will maintain the status quo and set in for hearing as the Court's calendar permits a hearing on the Debtors request that certain notice and waiting periods govern certain significant transfers of claims against, the Debtors. As such hearing the Debtors will further request that the Court approve the procedures set forth on Exhibit A hereto (the "Notice and Hearing Procedures").

**Basis for Relief**

**A.    NOLs are Property of a Debtor's Estate Entitled to Protection**

15. Courts have uniformly held that a debtor's NOLs constitute property of the estate under section 541 of the Bankruptcy Code. Courts also have uniformly held that they have the authority to impose measures intended to protect and preserve a debtor's NOLs. The seminal

case articulating this rule is *In re Prudential Lines, Inc.*, 107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991), *cert. denied* 502 U.S. 821 (1991). In *Prudential Lines*, the Court enjoined a parent corporation from taking a worthless stock deduction with respect to its equity in a bankrupt wholly-owned subsidiary, on the grounds that allowing the parent to take such a deduction would destroy its debtor-subsidiary's NOLs. In issuing the injunction, the Court held that the "debtor's potential ability to utilize NOLs is property of an estate," and that "the taking of a worthless stock deduction is an exercise of control over a debtor's NOLs" that was properly subject to the automatic stay. *Prudential Lines*, 107 B.R. 832, 838-42; *see also In re Southeast Banking Corp.*, 1994 WL 1893513 at *2, Case No. 91-14561-BKC-PGH (Bankr. S.D. Fla., July 21, 1994) (debtor's interest in their NOLs "constitutes property of the estate within the scope of [11 U.S.C. § 541(a)(1)] and is entitled to the protection of the automatic stay"); *In re Phar-Mor, Inc.*, 152 B.R. 924, 926 (Bankr. N.D. Ohio 1993) ("the sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate"); *In re Grossman's, Inc.*, 1997 WL 33446314 at *1, Case No. 97-695 (PJW) (Bankr. D. Del. Oct. 9, 1997) (the debtors' net operating loss carryforward is property of the debtors' estates and is protected by the automatic stay).

16. Because the Debtors' NOLs are property of their estates, this Court has the authority under section 362 of the Bankruptcy Code to enforce the automatic stay by restricting the transfer of the Debtors' equity securities in and of, and claims against, the Debtors which could reduce the value of the NOLs.

B. **Propriety of Relief Requested**

17. Numerous courts in this and other districts have commonly granted the type of relief requested herein (*i.e.*, the restriction or enjoining of transfers of claims in order to protect a debtor against the possible loss of its NOLs).[11] *See, e.g.*, *In re The Boyds Collection, Ltd.*, et al, Case No.05-43793DWK [Dkt. No. 106] (Bankr. D. Md. November 2, 2005) (debtor received thirty day notice period to object to transfer of claims of Substantial Claimholder); *In re PG&E National Energy Group, Inc., et. al.*, Case Nos. 03-30459PM [Dkt. Nos. 67, 207 and 706] (Bankr. D. Md. July 11, 2003, August 7, 2003, and November 17, 2003, respectively) (debtor provided fifteen (15) days' notice to object to proposed transfers of claims against the debtor that would increase the transferee's holding to or above $183 million in the aggregate face amount of claims); *In re Pinnacle Airlines Corp.*, Ch. 11 Case No. 12-11343 (REG) [Dkt. No. 186] (Bankr. S.D.N.Y. April 23, 2012) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors); *In re Frontier Airlines Holdings, Inc.*, Ch. 11 Case No. 08-11298 (RDD) [Dkt. No. 313] (Bankr. S.D.N.Y. June 3, 2008) (approving notification and hearing procedures for trading in claims and equity interests); *In re Northwest Airlines Corp.*, Ch.11 Case No. 05-17930 (ALG) [Dkt. No. 836] (Bankr. S.D.N.Y. October 28, 2005) (approving notification procedures and restrictions on certain transfers and claims against and equity interests in the debtors); *In re US Airways Group, Inc., et al.*, Case No. 02-83984 (SSM) [Dkt. No. 750] (Bankr. E.D. Va. Oct. 2, 2002) (debtor provided ten (10) days' notice to object to proposed transfers of claims against the debtor that would increase the transferee's holdings to or above $100 million in the aggregate face amount; $100 million in claims was the lowest amount that could reasonably be expected to lead to a distribution of 5%

---

[11] Also see *In re First Mariner Bancorp,* Case No.14-11952DER [Dkt. No. 132] (Bankr. D. Md. March 12, 2014) (debtor received fifteen (15) days' notice period to object to transfer of Equity Securities of Substantial Shareholder).

of the stock in the reorganized debtor); *In re Casual Male Corp.*, Case No. 01-41404 (REG) [Dkt. No. 43] (Bankr. S.D.N.Y. May 18, 2001) (enjoining transfers of common stock and convertible notes that would result in the transferee's holdings increasing to or beyond 4.99%; debtor provided thirty (30) days' notice to object to proposed transfers of senior subordinated notes or other general unsecured claims against the debtor); *In re Worldtex, Inc.*, Case No. 01-785 (MFW) [Dkt. No. 107] (Bankr. D. Del. Apr. 2, 2001) (debtor provided thirty (30) days' notice to object to proposed transfers that would result in the transferee holding 5% or more of the debtor's common stock or decrease the ownership interest of an existing 5% or greater shareholder); *In re First Merchants Acceptance Corp.*, 1998 Bankr. LEXIS 1816 (Bankr. D. Del. 1998) (debtor provided thirty (30) days' notice to object to proposed transfers of stock in the debtor that would increase the transferee's holdings to or above 300,000 shares of the debtor's stock and to any proposed transfers of 1995 subordinated reset notes or general unsecured claims against the debtor).

18.     Courts ordering such relief generally have done so by imposing notice and hearing requirements on any proposed transfer of claims to or by a person whose holdings of such claims exceeds, or would exceed as a result of the proposed transfer, a certain threshold amount. The order in *First Merchants Acceptance*, 1998 Bankr. LEXIS 1816 (Bankr. D. Del. 1998), was typical in this regard. There, the Court entered an order imposing on any party a duty to provide notice to the Court and to debtor's counsel if such party intended to (a) acquire, accumulate or sell more than a prescribed number of shares of the debtor, or to add additional shares to such a block, or (b) acquire or sell any subordinated reset notes or unsecured claims against the debtors. The debtor then was afforded 30 days to object to such transaction, at which point a hearing would be held so that the court could decide whether to allow any such transfer

to be consummated. *See also In re Williams Comm. Group, Inc.*, Case No. 02-11957 (BRL) (Bankr. S.D.N.Y. July 24, 2002) (claims trading restrictions applied to certain claimholders).

C.  **The Relief Sought Is Narrow in Scope**

19.  The requested relief has been narrowly tailored to apply only to those holders who own (or would own as a result of the proposed transfer) claims against the Debtors with an aggregate principal amount of $4.2 million or more. The Debtors believe that these levels are the highest amounts that can be reasonably expected to lead to a distribution of less than 5% of the equity in the Debtors as reorganized. Thus, the Debtors only seek to impose the notice and hearing requirements on transfers of claims by or to a relatively small group of persons.

20.  Although the Debtors' proposed procedures follow the procedures in *Boyds Collection* and are similar to those approved in *First Merchants Acceptance* and *UAL*, *supra*, the Debtors have excluded from their proposed notice and hearing procedures those transfers by holders of claims and interests expected to fall under the so-called "De Minimis Rule" (*i.e.*, persons who beneficially own or would own, after giving effect to any proposed transfer, claims with an aggregate principal amount of less than $4.2 million). Thus, the Debtors' proposed procedures are less burdensome than those approved in *First Merchants Acceptance*.

21.  Also, similar to the notice and hearing procedures approved in *Boyds Collection*, *First Merchants Acceptance* and *UAL*, *supra*, the Debtors' proposed notice and hearing procedures provide that significant claimholders (including entities that would become significant claimholders after a proposed purchase transaction) must give the Debtors 30 days' notice of a proposed transfer of such claims before such holders could move the court for relief from the automatic stay should the Debtors object to such transaction.

22. It is imperative that the Debtors closely scrutinize any transactions that would increase the risk of an "ownership change" because the very low consolidated value of the Debtors' equity makes acquiring large blocks of debt relatively inexpensive (and therefore likely), and there is not a requirement for claim holders to disclose their debt ownership to the Debtors or to the Securities and Exchange Commission. For the Debtors to adequately evaluate whether a particular transaction would materially increase the risk of an "ownership change" occurring, the Debtors need to conduct a thorough investigation to determine the identity of their stakeholders and the size of such stakeholders' holdings before and after such proposed transaction. Once the Debtors determine the identity of their current stakeholders, the Debtors must make a very complicated legal determination of whether the proposed transfer of claimswould likely trigger an "ownership change" for purposes of IRC Section 382. The Debtors believe that they cannot conduct a necessarily thorough and diligent investigation and analysis in much less than 30 days.

23. The Debtors' NOLs are valuable assets of their estates that will facilitate the Debtors' reorganization and benefit all of their stakeholders. If the Debtors are unable to monitor and object to the above-referenced transfers, the Debtors' future use of their NOLs may be jeopardized. The Debtors have proposed notice and hearing procedures that impose minimal burdens on affected entities to achieve a substantial benefit to the Debtors' estate, and the Debtors believe that granting the relief requested in this Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest.

### Notice

24. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. Notice of this motion has been given to the following parties or, in lieu thereof, to their

counsel, if known: (i) the Office of the United States Trustee, (ii) the indenture trustee for each of the Debtors' outstanding bond issues, and (iii) all other parties identified on the Consolidated List of 20 Largest Unsecured Creditors filed herein by the Debtors. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### Statement Pursuant to Local Bankruptcy Rule 9013-2

25. Pursuant to Rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, they will rely solely upon the grounds and authorities set forth herein.

### No Prior Request

26. No previous request for the relief sought herein has been made to this or any other Court.

### Conclusion

WHEREFORE, the Debtors respectfully request that the Court (a) enter an order on an interim basis, substantially in the form attached hereto limiting the transfer of certain claims pending the Courts further ruling on this Motion and setting a hearing date thereon, (b) enter an order implementing the Notice and Hearing Procedures set forth on Exhibit A hereto, and (c) grant such other and further relief as the Court deems appropriate.

Dated: July 20, 2016

/s/ *Joel I. Sher*
Joel I. Sher, Bar No. 00719
Daniel J. Zeller, Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4277
Fax: 410-539-7611
Email: jis@shapirosher.com
       djz@shapirosher.com

        -and-

Adam H. Friedman, pro hac vice pending
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
Tel: 212-451-2289
Fax: 212-451-2222
Email: AFriedman@olshanlaw.com

*Co-Counsel for Debtors and Debtors in Possession*