# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (BALTIMORE DIVISION)

| | |
|---|---|
| In re: | Chapter 11 |
| Novation Companies, Inc., et al., | Case No. 16-19745, 19747-19749 DER |
| Debtors.[1] | (Jointly Administered) |

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF (i) NOVATION COMPANIES, INC. AND (ii) NOVASTAR MORTGAGE LLC

**Dated:  May 30, 2017**

**OLSHAN FROME WOLOSKY LLP**
Adam H. Friedman
Thomas J. Fleming
Jonathan T. Koevary
Lauren B. Irby
1325 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 451-2300

-and-

**SHAPIRO SHER GUINOT & SANDLER, P.A.**
Joel I. Sher, Bar No. 00719
Daniel J. Zeller, Bar No. 28107
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
Telephone:  (410) 385-4277

*Counsel to the Plan Debtors and Plan Debtors-in-Possession*

---

[1] The debtors in these chapter 11 cases are: (i) Novation Companies, Inc. f/k/a NovaStar Financial, Inc., (ii) NovaStar Mortgage LLC f/k/a NovaStar Mortgage, Inc., (iii) NovaStar Mortgage Funding Corporation and (iv) 2114 Central, LLC f/k/a Advent Financial Services, LLC.  The Plan proponents herein are (i) Novation Companies, Inc. f/k/a NovaStar Financial, Inc., (ii) NovaStar Mortgage LLC f/k/a NovaStar Mortgage, Inc.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

    A.    Background ...........................................................................................2

    B.    Key Components of the Plan .............................................................3

    C.    Acceptance of the Plan......................................................................4

ARGUMENT ...........................................................................................................................5

    I.    THE PLAN COMPLIES WITH THE CRAMDOWN PROVISIONS OF
        SECTION 1129(b) OF THE BANKRUPTCY CODE ..............................5

        A.    The Plan Does Not Unfairly Discriminate Against the Litigation
               Claimants ...........................................................................................6

        B.    The Plan Is Fair and Equitable with Respect to the Litigation
               Claimants ..........................................................................................11

    II.    THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS
         SET FORTH IN SECTION 1129(a) OF THE BANKRUPTCY CODE..............11

        A.    The Plan Satisfies the Requirements of Section 1129(a)(1) of the
               Bankruptcy Code ..............................................................................13

             1.    The Plan Complies with Section 1122 of the Bankruptcy
                    Code ...................................................................................13

             2.    The Plan Satisfies the Requirements of Section 1123(a) of
                    the Bankruptcy Code..........................................................15

                   (a)    The Plan Designates Classes of Claims —11 U.S.C.
                         § 1123(a)(1) ......................................................16

                 (b)    The Plan Specifies Unimpaired Classes — 11
                         U.S.C. § 1123(a)(2)............................................16

                 (c)    The Plan Adequately Specifies the Treatment of
                         Impaired Classes — 11 U.S.C. § 1123(a)(3) .....................16

                 (d)    The Plan Provides the Same Treatment for Claims
                          or Interests Within Each Class — 11 U.S.C.
                           § 1123(a)(4) ......................................................17

TABLE OF CONTENTS
(continued)

Page

      (e)    The Plan Provides Adequate Means for its Implementation — 11 U.S.C. § 1123(a)(5) ......................17

      (f)     11 U.S.C. § 1123(a)(6) Is Not Applicable ........................17

      (g)    The Plan Contains Appropriate Provisions Respecting the Selection of Post-Confirmation Directors and Officers — 11 U.S.C. § 1123(a)(7) .............18

   3.    The Plan Complies with Section 1123(b) of the Bankruptcy Code .................................................................................18

B.    The Plan Debtors Have Complied With the Provisions of Title 11 as Required by Section 1129(a)(2) of the Bankruptcy Code ....................19

C.    Section 1129(a)(3) Has Been Satisfied Because the Plan Has Been Proposed in Good Faith and Not by any Means Forbidden by Law..........21

D.    The Plan Provides for Bankruptcy Court Approval of Payment for Services and Expenses — 11 U.S.C. § 1129(a)(4) .................................23

E.    The Plan Debtors Have Complied with Section 1129(a)(5) by Disclosing all Necessary Information Regarding Managers and Officers of the Reorganized Plan Debtors .................................................23

F.    The Plan Does Not Contain Rate Changes Subject to the Jurisdiction of any Governmental Regulatory Commission — 11 U.S.C. § 1129(a)(6)..............................................................................24

G.    The Plan Is in the Best Interests of Creditors — 11 U.S.C. § 1129(a)(7) .........................................................................................25

H.    The Plan Satisfies Section 1129(a)(8) with Respect to all Classes Except Classes 4a and 4b ...........................................................................26

I.     The Plan Provides for Payment in Full of all Allowed Priority Claims — 11 U.S.C. § 1129(a)(9) ............................................................26

J.     The Plan Has Been Accepted by at Least One Impaired Class of Claims that Is Entitled to Vote — 11 U.S.C. § 1129(a)(10)......................28

K.    The Plan Is Feasible — 11 U.S.C. § 1129(a)(11) .....................................29

L.    The Plan Provides for Full Payment of all Statutory Fees as Required by 11 U.S.C. § 1129(a)(12) ........................................................29

TABLE OF CONTENTS
(continued)

Page

M. The Plan Provides for the Continuance of Retiree Benefit
Obligations as Required by 11 U.S.C. § 1129(a)(13) ...............................30

III. THE PLAN SETTLEMENT WITH THE CLASS 2 NOTEHOLDERS
AND THE CREDITORS' COMMITTEE SHOULD BE APPROVED ..............30

IV. THE POST-EFFECTIVE DATE PROTECTIONS AFFORDED TO THE
PLAN DEBTORS AND CERTAIN THIRD PARTIES THAT MADE
CONTRIBUTIONS TO THE CONFIRMATION PROCESS ARE
APPROPRIATE AND CONSISTENT WITH ESTABLISHED
PRECEDENT ....................................................................................................32

A. The Discharge, Injunction, Release and Exculpation Provisions
Embodied in the Plan Are Permissible and Should Be Approved ............32

B. The Injunction and Discharge Provisions Set Forth in Article X of
the Plan Comply with the Bankruptcy Code .................................................32

C. The Releases by the Plan Debtors in Section 10.06 of the Plan Are
Fair, Reasonable, and in the Best Interests of the Estates .........................33

D. The Third-Party Releases Set Forth in Section 10.06 of the Plan
Are Appropriate and Consistent with Established Precedent and
Therefore Should Be Approved ....................................................................36

1. Consensual Third Party Releases Are Permissible .......................36

2. The Third Party Release Is Consensual .........................................40

E. The Exculpation Provision Set Forth in Section 10.07 of the Plan
Are Appropriate and Consistent with Established Precedent and
Therefore Should Be Approved ....................................................................43

1. The Exculpation Is Well in Line With Those Routinely
Approved by Courts in this District and Elsewhere.......................43

F. Request for Authority to Consummate and Implement the Plan
Immediately Upon the Entry of the Confirmation Order
Notwithstanding 14-Day Stay of the Confirmation Order Imposed
by Operation of Bankruptcy Rule 3020(E) ..................................................45

CONCLUSION.....................................................................................................................46

## TABLE OF AUTHORITIES

Page

CASES

Behrmann v. National Heritage Foundation, Inc.,
663 F.3d 704 (4th Cir. 2011) ........................................................................36, 37, 38

Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),
280 F.3d 648 (6th Cir. 2002) ...................................................................................38

Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber
Network, Inc.),
416 F.3d 136 (2d Cir. 2005)......................................................................................37

Food Lion, Inc. v. S.L. Nusbaum Insurance Agency, Inc.,
202 F.3d 223 (4th Cir. 2000) ........................................................................36, 38, 39

Gillman v. Cont'l Airlines (In re Cont'l Airlines),
203 F.3d 203 (3d Cir. 2000).....................................................................................38

Great W. Bank & Trust v. Entz-White Lumber & Supply, Inc. (In re Entz-White
Lumber & Supply, Inc.),
850 F.2d 1338 (9th Cir. 1988) ..................................................................................26

In re 11,111, Inc.,
117 B.R. 471 (Bankr. D. Minn. 1990) .......................................................................14

In re A.P.I., Inc.,
331 B.R. 828 (Bankr. D. Min. 2005) .........................................................................43

In re Abbotts Dairies of Pa., Inc.
788 F.2d 143 (3d Cir. 1986).....................................................................................21

In re Adelphia Commc'ns Corp,
368 B.R. 140 (Bankr. S.D.N.Y. 2007), appeal dismissed, 367 B.R. 84
(S.D.N.Y. 2007), appeal dismissed, 371 B.R. 660 (S.D.N.Y. 2007)...........................9

In re AG Consultants Grain Div., Inc.,
77 B.R. 665 (Bankr. N.D. Ind. 1987).........................................................................14

In re Almatis B.V.,
No. 10-12308 (Bankr. S.D.N.Y. Sept. 20, 2010).........................................................42

In re American HomePatient, Inc.,
298 B.R. 152 (Bankr. M.D. Tenn. 2003), subsequently aff'd, 420 F.3d 559
(6th Cir. 2005)..........................................................................................................9

iv

TABLE OF AUTHORITIES
(continued)

Page

*In re Armstrong World Indus.,*
    348 B.R. 136 (Bankr. D. Del. 2006) ..................................................................21

*In re Arrowmill Development Corp.,*
    211 B.R. 497 (Bankr. D. N.J. 1997) ..................................................................39

*In re Bryson Properties XVIII,*
    129 B.R. 440 (M.D.N.C.1991), *rev'd on other grounds*, 961 F.2d 496 (4th
    Cir.), cert. denied, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992)...............7

*In re Burns & Roe Enter.,*
    2009 U.S. Dist. LEXIS 13574 (D.N.J. Feb. 20, 2009) ..........................................21

*In re Cajun Elec. Power Coop., Inc.,*
    150 F.3d 503 (5th Cir. 1998) ...........................................................................6

*In re Calpine Corp.,*
    Case No. 05-60200, 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 17, 2007)...........................42

*In re Capmark Fin. Grp., Inc.,*
    438 B.R. 471 (Bankr. D. Del. 2010) .............................................................30, 31

*In re Caribbean Petroleum Corp.,*
    Case No. 10-12553 (KG), 2012 WL 1899322 (Bankr. D. Del. May 24, 2012) ......................8

*In re Cellular Info. Sys. Inc.,*
    171 B.R. 926 (Bankr. S.D.N.Y. 1994) ..............................................................29

*In re Chemtura Corp.,*
    436 B.R. 286 (Bankr. S.D.N.Y. 2010) ...............................................................8

*In re Combustion Eng'g, Inc.,*
    391 F.3d 190 (3d Cir. 2004)..........................................................................21

*In re Conseco, Inc.,*
    301 B.R. 525 (Bankr. N.D. 1ll. 2003)...............................................................42

*In re Coram Healthcare Corp.,*
    315 B.R. 321 (Bankr. D. Del. 2004) .............................................................30, 40

*In re DBSD North America, Inc.,*
    419 B.R. 149 (Bankr. S.D.N.Y. 2009) ..............................................................33

TABLE OF AUTHORITIES
(continued)

Page

*In re Dow Corning Corp.*,
244 B.R. 634 (Bankr. E.D. Mich. 1999), aff'd, 255 B.R. 445 (E.D. Mich. 2000), aff'd and remanded, 280 F.3d 648 (6th Cir. 2002)......................................................10

*In re Drexel Burnham Lambert Group Inc.*,
138 B.R. 714 (Bankr. S.D.N.Y. 1992), *order aff'd*, 140 B.R. 347 (S.D.N.Y. 1992) .......................................................................................................................14, 29

*In re Enron Corp.*,
326 B.R. 497 (S.D.N.Y. 2005)...............................................................................44

*In re Final Analysis, Inc.*,
417 B.R. 332 (Bankr. D. Md. 2009) .......................................................................30

*In re Gen. Teamsters, Warehousemen & Helpers Union Local*
890, 225 B.R. 719 (Bankr. N.D. Cal. 1998) .........................................................10

*In re Genco Shipping & Trading Ltd.*,
513 B.R. 233 (Bankr. S.D.N.Y. 2014)...................................................................41

*In re Granite Broadcasting Corp.*,
369 B.R. 120 (Bankr. S.D.N.Y. 2007)...................................................................44

*In re Great Bay Hotel & Casino, Inc.*,
251 B.R. 213 (Bankr. D.N.J. 2000) .........................................................................9

*In re Health Diagnostic Lab., Inc.*,
No. 15-32919, 2016 WL 6068812 (Bankr. E.D. Va. Oct. 14, 2016)......................31

*In re ID Liquidation One, LLC*,
555 Fed. Appx. 202 (3d Cir. 2014).........................................................................31

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) .........................................................34, 40, 41

*In re Jartran, Inc.*,
44 B.R. 331 (Bankr. N.D. Ill. 1984) .........................................................................7

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987)...........................................................................10, 14

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in relevant part*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988)...........................................................................................................6, 20

vi

TABLE OF AUTHORITIES
(continued)

Page

*In re Johnson*,
    69 B.R. 726 (Bankr. W.D.N.Y. 1987) .................................................................14

*In re Madison Hotel Associates*,
    749 F.2d 410 (7th Cir. 1984) ............................................................................21

*In re Martin*,
    212 B.R. 316 (B.A.P. 8th Cir. 1997)...................................................................31

*In re Master Mortgage Invest. Fund, Inc.*,
    168 B.R. 903 (Bankr. W.D. Mo. 1994).................................................................34

*In re Montgomery Court Apartments, Ltd.*,
    141 B.R. 324 (Bankr. S.D. Ohio 1992)................................................................22

*In re NAMCO, LLC*,
    Case No. 13-10610 (Bankr. D. Del. Aug. 1, 2013).................................................42

*In re Natural Prods. Grp. LLC*,
    Case No. 10-10239, 2010 WL 2745983 (Bankr. D. Del. Feb. 22, 2010) ...............................42

*In re Neogenix Oncology, Inc.*,
    508 B.R. 345 (Bankr. D. Md. 2014) ...............................................................40, 43

*In re Nickels Midway Pier, LLC*,
    2010 WL 2034542 (Bankr. D.N.J. May 21, 2010) ..................................................44

*In re NII Holdings, Inc.*,
    536 B.R. 61 (Bankr. S.D.N.Y. 2015) ..................................................................31

*In re Nutritional Sourcing Corp.*,
    398 B.R. 816 (Bankr. D. Del. 2008) ...................................................................30

*In re PWS Holding Corp.*,
    228 F.3d at 242 ....................................................................................21, 43

*In re Railworks Corp.*,
    345 B.R. 529 (Bankr. D. Md. 2006) ...................................................................38

*In re Rochem, Ltd.*,
    58 B.R. 641 (Bankr. D.N.J. 1985) .....................................................................10

*In re Sea Trail Corp.*,
    No. 11-07370-8-SWH, 2012 WL 5247175........................................................7, 9

4182019-6

TABLE OF AUTHORITIES
(continued)

Page

*In re Sound Radio, Inc.*,
   93 B.R. 849 (Bankr. D.N.J. 1988) ...................................................................21

*In re Specialty Equipment Cos.*,
   3 F.3d 1043 (7th Cir. 1991) .............................................................37, 38, 42

*In re STC, Inc.*,
   No. 14-41014, 2016 WL 3884799 (Bankr. S.D. Ill. Apr. 7, 2016)...........................................9

*In re T-H New Orleans Ltd. P'ship*,
   116 F.3d 790 (5th Cir. 1997) ...................................................................22

*In re TEC-Gull Creek Inc.*,
   Case No. 14-20311 (Bankr. D. Md. 2014)..................................................40

*In re Texaco Inc.*,
   84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y.
   1988) ...................................................................13

*In re Toussaint*,
   No. 01-12690-TJC, 2008 WL 427278 (Bankr. D. Md. Feb. 13, 2008) ...................................30

*In re Toy & Sports Warehouse, Inc.*,
   37 B.R. 141 (Bankr. S.D.N.Y. 1984)...................................................................7

*In re Tribune Co.*,
   2011 Bankr. LEXIS 4128 (Bankr. D. Del. Oct. 21, 2011)...................................34

*In re U.S. Mineral Prods. Co.*,
   No. 01-2471(JKF), 2005 WL 5898300 (Bankr. D. Del. Nov. 29, 2005)...........................8, 10

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012), *stay pending appeal denied* (June 27, 2012) ...........................25

*In re Washington Mutual, Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) ...................................................31, 34

*In re West Coast Video Enter., Inc.*,
   174 B.R. 906 (Bankr. E.D. Pa. 1994) ...................................................................40

*In re WorldCom, Inc.*,
   No. 02–13533, 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ...................................19

*In re Zenith Electronics Corp.*
   241 B.R. 92 (Bankr. D. Del. 1999) ...................................................21, 22, 34, 40

## TABLE OF AUTHORITIES
(continued)

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
   987 F.2d 154 (3d Cir. 1993)............................................................................6

*National Heritage Foundation, Inc. v. Highbourne Foundation*,
   760 F.3d 344 (4th Cir. 2014) ...............................................................36, 37

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*,
   800 F.2d 581 (6th Cir. 1986) ............................................................14

*U.S. Bank Nat'l Assoc.* v. *Wilmington Trust Co. (In re Spansion, Inc.)*,
   426 B.R. 114 (Bankr. D. Del. 2010) ...........................................33, 34, 40, 42

### STATUTES

11 U.S.C. § 1123(a)(1)......................................................................................16

11 U.S.C. § 1123(a)(2)......................................................................................16

11 U.S.C. § 1123(a)(3)..................................................................................16, 17

11 U.S.C. § 1123(a)(4)......................................................................................17

11 U.S.C. § 1123(a)(5)......................................................................................17

11 U.S.C. § 1123(a)(6)..................................................................................17, 18

11 U.S.C. § 1123(a)(7)......................................................................................18

11 U.S.C. § 1123(b)......................................................................................30, 33

11 U.S.C. § 1124..............................................................................................26

11 U.S.C. § 1126(f)................................................................................... passim

11 U.S.C. § 1129(a)(1)..............................................................................13, 15, 19

11 U.S.C. § 1129(a)(2)..........................................................................11, 12, 19, 20

11 U.S.C. § 1129(a)(3)............................................................................11, 21, 22

11 U.S.C. § 1129(a)(4)..........................................................................................12, 23

11 U.S.C. § 1129(a)(5)......................................................................12, 18, 23, 24

11 U.S.C. § 1129(a)(6)......................................................................................12, 24

# TABLE OF AUTHORITIES
(continued)

Page

11 U.S.C. § 1129(a)(7) .................................................................................................12, 25

11 U.S.C. § 1129(a)(8) ........................................................................................6, 12, 13, 26

11 U.S.C. § 1129(a)(9) ..................................................................................12, 26, 27, 28

11 U.S.C. § 1129(a)(10) ...............................................................................................12, 28

11 U.S.C. § 1129(a)(11) ...............................................................................................12, 29

11 U.S.C. § 1129(a)(12) ...........................................................................................12, 29, 30

11 U.S.C. § 1129(a)(13) ...............................................................................................12, 30

11 U.S.C. § 1129(b) ...........................................................................................6, 11, 13, 46

11 U.S.C. § 1141(a) ..............................................................................................................33

28 U.S.C. § 1930 .......................................................................................................12, 29, 30

## OTHER AUTHORITIES

Fed. R. Bankr. P. 3020(e) ....................................................................................................45

Fed. R. Bankr. P. 9019(a) ...........................................................................................2, 30, 32

H.R. Rep. No. 95-595, at 412 (1977) ...............................................................................13, 20

4182019-6

## PRELIMINARY STATEMENT

Novation Companies, Inc., f/k/a/ NovaStar Financial, Inc. ("Novation") and NovaStar Mortgage LLC f/k/a NovaStar Mortgage, Inc. ("NovaStar Mortgage" and, together with Novation, the "Company" or the "Plan Debtors," and, collectively with non-Plan Debtors NovaStar Mortgage Funding Corporation and 2114 Central, LLC, the "Debtors") have proposed the plan, Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of (i) Novation Companies, Inc. and (ii) NovaStar Mortgage LLC, dated May 17, 2017 (together with all Exhibits and supplements thereto and as may be modified and/or amended from time to time, the "Plan," [Dkt. No. 486]). The Plan manifestly represents the best possible outcome for all classes of creditors and equity holders in these chapter 11 Cases.  By reaching a settlement with the Creditors' Committee and Class 2 Noteholders on a consensual chapter 11 plan, the Plan Debtors have reached a significant milestone in the case with all fixed unsecured claims supporting the Plan.

By using available cash on hand to acquire (the "Acquisition") a profitable business, Healthcare Staffing, Inc. ("HCS"), managing and monetizing a valuable bond portfolio or residential mortgage-backed securities ("RMBS") which the Debtors estimate will generate approximately $49 million in future cash flows, and preserving upwards of $700 million in NOL's, the Debtors have proposed a Plan that pays creditors in full and preserves equity value to public shareholders.  The Debtors are utilizing the rehabilitative tools and fulfilling the rehabilitative purpose of the Bankruptcy Code and fulfilling the fiduciary duties under applicable Maryland Law owing to all stakeholders in the Cases, creditors and equity holders alike.  The Plan represents the best alternative for creditors and maximizes the value of the Debtors' assets.[2]

---

[2] As discussed below Novation alone will seek confirmation of the First Amended Plan as to itself. Novastar Mortgage will not seek confirmation of its plan at this time.

1

A.    Background

On July 20, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Since the Petition Date, the Debtors have continued to manage their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On August 1, 2016, the Official Committee of Unsecured Creditors (the "Creditors' Committee") was formed.  No trustee or examiner has been appointed in these Cases.

On April 11, 2017, the Bankruptcy Court entered an order (the "Disclosure Statement Order;" Docket No. 409) approving the disclosure statement related to the Plan Debtors' First Amended Plan of Reorganization, (the "Disclosure Statement;" Docket No. 405).  In accordance with the Disclosure Statement Order, the Plan Debtors served the Disclosure Statement, the First Amended Plan, and appropriate ballots and notices, as applicable, on all required parties.  On April 17, 2017, the Plan Debtors commenced solicitation of votes with respect to the First Amended Plan.

The First Amended Plan was headed to a contested confirmation showdown between the Debtors, the Creditors' Committee and the Debtors' largest group of creditors: the Class 2 Noteholders.  Following intense negotiation, on May 17, 2017, the Debtors filed the Plan as amended.  The Plan resolved the most contentious issues in these cases: the myriad disputes over treatment the Class 2 Noteholders.  Section 10.10 of the Plan acknowledges the compromise and contemplates approval of the compromise pursuant to Bankruptcy Rule 9019 through the order confirming the Plan.

This settlement was reached after months of protracted litigation, and avoids what would have been a hotly contested plan confirmation hearing and provides similar economic terms as does the Debtors' previous plan in which they sought to reinstate the Noteholders' claims.  The

2

Plan provides for a cure of $5.8 million (not the $10.8 million asserted by Noteholders); with principal repaid at contract rate of interest and 2033 maturity. The amended notes issued to the Class 2 Noteholders will by secured by lien on all assets except for inventory and accounts receivable.

While the Debtors are confident they could have prevailed at trial, the settlement saves significant estate resources and risk. In the event the Debtors were unsuccessful, the Committee and Noteholders would have sought an immediate liquidation. Such a liquidation, if it was granted, would have resulted in creditors getting materially less than the Plan provides (payment in full).

On May 18, 2017 the Plan Debtors submitted a letter to voting creditors advising them of the amended Plan and the extension of the voting deadline to May 26, 2017.

B.    Key Components of the Plan

Confirmation of the Plan is the culmination of months of effort, negotiations with the Debtors' major stakeholders and the search for a solution for the Debtors' go-forward business. Since the Petition Date, the Debtors have looked at several target acquisitions. Through extraordinary effort, focus, and a singular desire to maximize value, the Debtors have secured a very strong business to acquire and reorganize around. HCS is a steady and profitable business, with growing profits and cash flows. The Debtors, after months of due diligence and analysis, believe the HCS transaction presents a unique opportunity for all stakeholders.

Along with this new business, the Plan Debtors will also continue to manage and monetize their valuable RMBS bond portfolio, from which the Plan Debtors' estate will generate

3

approximately $49 million over the next 16 years (the very same maturity as the Class 2 notes (the "Notes," or the "Senior Notes").[3]

C.    Acceptance of the Plan

Having now successfully completed the solicitation process, the Plan Debtors submit this Confirmation Brief in support of confirmation of the Plan. Section I of the Confirmation Brief addresses cramdown of the Class 4 Litigation Claimants. Section II details the Plan's compliance with the general confirmation requirements under section 1129(a) of the Bankruptcy Code. Section III addresses the settlement embodied in the Plan. Section IV addresses the appropriateness of the releases contained in the Plan.

The Plan has been accepted by the Holders of Class 2 (Noteholders) Class 3a (General Unsecured Claims Against Novation), Class 3b (General Unsecured Claims Against NovaStar Mortgage). Class 4a (RMBS Litigation Claims Against Novation) and Class 4b (RMBS Litigation Claims Against NovaStar Mortgage) did not vote in favor. Specifically, voting is as follows:

| Classes & Case Nos. | Number Accepting (% of Number Voted) | Number Rejecting (% of Number Voted) | Amount Accepting (% of Amount Voted) | Amount Rejecting (% of Amount Voted) |
|---|---|---|---|---|
| Class 2 (16-19745) | [3] (100%) | [0] (0%) | [$85,937,500] (100%) | [$0] (0%) |
| Class 3a (16-19745) | [6] (100%) | [0] (0%) | [$1,201,546] (100%) | [$0] (0%) |
| Class 3b (16-19747) | [0] (0%) | [0] (0%) | $[0] (0%) | [$0] (0%) |
| Class 4a (16-19745) | [5] (25%) | [15] (75%) | [$91.000,000] (99.99%) | [$14.00] (.00001%) |
| Class 4b (16-19747) | [5] (25%) | [15] (75%) | [$91.000,000] (99.99%) | [$14.00] (.00001%) |

---

[3] A portion of the cash flows is attributable to one bond held by Novastar Mortgage. Even without those cash flows the First Amended Plan is feasible. The Debtors expect those cash flows will ultimately be available to satisfy the claims of the Novation creditors.

4

Unsecured creditors overwhelmingly endorse confirmation of the Plan. All creditors with fixed or liquidated claims voted to support the Plan.  Only the Class 4a and b unliquidated, disputed and contingent RMBS Litigation classes did not vote in support, however it is important to highlight **that all creditors in such classes that voted "no",  all have un-liquidated and disputed claims**.  One holder of an un-liquidated , contingent Class 4 claim filed in a "undetermined" amount, Deutsche Bank National Trust Company, as Trustee of the Novastar Mortgage Funding Series 2007-1 (the "Trust") has filed a written objection (Docket No 502) to the Plan.  The Trust also submitted a ballot rejecting the Plan.  In the ballot the Trust represented that its claim is "unknown".  As even the Trust admits, its claims are unliquidated and highly disputed.  Furthermore the Trust's claims are based  upon a complaint that is subject to pending motion to dismiss filed by the Plan Debtors, in the state court, which the Debtors are optimistic will be granted.  It is hard to fathom how a creditor which has an unliquidated, disputed claim, who filed a ballot in an "unknown" amount, objects to the "unfair" treatment of its "claim".

The Plan satisfies each of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code.  In particular, the Plan has been proposed in good faith, is feasible, serves the best interests of the Debtors' creditors, and is fair and equitable.  The solicitation results validate the Plan Debtors' belief that the Plan represents the best reorganization path available.  Accordingly, the Plan should be confirmed by the Bankruptcy Court.

## **ARGUMENT**

### I.    THE PLAN COMPLIES WITH THE CRAMDOWN PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE

Section 1129(b) provides in pertinent part:

> Notwithstanding section 510(a) of [the Bankruptcy Code], if all of
> the applicable requirements of [section 1129(a) of the Bankruptcy

4182019-6

Code] other than [the requirement contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph *if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan*.

11 U.S.C. § 1129(b)(1) (emphasis added).

Section 1129(a)(8) of the Bankruptcy Code requires that each Class of Claims or Interests either (a) has accepted the Plan, or (b) is not impaired under the Plan.  Because the Class 4a and 4b Litigation Claimants voted to reject the plan and Classes 2 and 3a voted to accept the Plan, Classes 4(a) and 4(b) are subject to cramdown.

Under section 1129(b), a bankruptcy court may confirm a plan over the rejection of an impaired class or classes of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting class.  *See In re Cajun Elec. Power Coop., Inc.*, 150 F.3d 503, 519 (5th Cir. 1998); *John Hancock Mut. Life Ins.  Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993).

A.      The Plan Does Not Unfairly Discriminate Against the Litigation Claimants

Section 1129(b) of the Bankruptcy Code does not prohibit all discrimination between a dissenting class and other classes under a plan.  To the contrary, the very premise of any chapter 11 plan with multiple impaired classes is to differentiate among such classes.  Thus, the Bankruptcy Code permits discrimination in classification, but does not permit "unfair" discrimination with respect to a dissenting impaired class.

Consistent with the foregoing, applicable case law provides that the prohibition against unfair discrimination bars less favorable treatment of a dissenting class than that accorded to another class of similarly situated claims or interests. *See Johns-Manville Corp.*, 68 B.R. at 636 (the 'unfair discrimination' standard "ensures that a dissenting class will receive relative value

6

equal to the value given to all other similarly situated classes"); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 151-52 (Bankr. S.D.N.Y. 1984) ("In a nutshell, if the plan protects the legal rights of a dissenting class in a manner consistent with the treatment of other classes whose legal rights are intertwined with those of the dissenting class, then the plan does not discriminate unfairly with respect to the dissenting class."); *In re Jartran, Inc.*, 44 B.R. 331, 381-84 (Bankr. N.D. Ill. 1984) (holding that there is no unfair discrimination solely because separate classes contain different types of claims).  Here, there is no unfair discrimination.

**First and foremost, there is no unfair discrimination because all unsecured creditors are being paid in full, with interest**. The Plan therefore protects the legal and economic rights of all classes, including Class 4.

Second, there is a legitimate and reasonable basis for the different classification and treatment of each class of unsecured claims and such treatment has been proposed in good faith. *See In re Bryson Properties XVIII*, 129 B.R. 440, 445 (M.D.N.C.1991), *rev'd on other grounds*, 961 F.2d 496 (4th Cir.), cert. denied, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992) ("Where legal claims are sufficiently different as to justify a difference in treatment under a reorganization plan, reasonable differences in treatment are permissible."); *In re Sea Trail Corp.*, No. 11-07370-8-SWH, 2012 WL 5247175 (Bankr. E.D.N.C. Oct. 23, 2012.  With respect to the Holders of Class 4 Litigation Claims, there are no other Classes of Claims or Interests under the Plan that are similarly situated.  Class 2 Noteholders are financial creditors with liquidated contractual claims under an Indenture.  The Class 3 creditors are "garden variety" trade claims which are liquidated and arose in the ordinary course of business.  These two classes are significantly different from the Class 4 Litigation Claimants, all of which are disputed claimants with unliquidated claims. By definition, disputed litigation claims are unique, incapable of being liquidated, and classifying

them in a separate class is customary in chapter 11 cases and entirely appropriate.  *In re U.S. Mineral Prods. Co*., No. 01-2471(JKF), 2005 WL 5898300, at * 23 (Bankr. D. Del. Nov. 29, 2005) ("The Plan properly classifies Litigation Claims in a separate class.") (Citations omitted).

Practical reasons also justify separate classification and treatment.  By their nature, it is virtually impossible to confirm a plan without treating these disputed, unliquidated litigation claimants in the manner the Plan does (i.e. separate classification with payment in full with interest for a period longer than fixed and liquidated general trade claims; albeit for a period shorter than the Class 2 Noteholder Claims, who bargained for a 16 year repayment term.)  *See* 7 Collier on Bankruptcy ¶ 1129.04[3][b][i] (15th ed. rev. 1997) (if a large tort claim dwarfs all other unsecured claims, including those of trade creditors, it makes sense to separately classify the two and pay the trade or other creditors first or faster)

*Critically*, each of the Class 4 claimants who voted against the Plan have not so much as specified an amount or have done anything to establish that they have any right to payment whatsoever.  The Trust filed a ballot in an "unknown" amount.  All other "no" votes in Class 4a and 4b filed ballots for indemnification or contribution claims in the amount of $1.00, per the terms of the Court's solicitation order. Indeed, over ninety-nine percent (99%) in amount of the Class 4a and 4b creditors voted to accept the Plan.  These indemnification claims are subject to disallowance in any event under Bankruptcy Code section 502(e)(1)(B) which provides that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor or has secured the claim of a creditor to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution."  *See In re Chemtura Corp.*, 436 B.R. 286, 292-93 (Bankr. S.D.N.Y. 2010); *In re Caribbean Petroleum Corp.*, Case No. 10-12553 (KG), 2012 WL 1899322,

at *3 (Bankr. D. Del. May 24, 2012) (finding that a claim for indemnification is "functionally the same as [a] claim[] for reimbursement or contribution").

The Litigation Claims are entirely different from all other classes of claims and warrant different classification and treatment. *See, e.g.*, *In re STC, Inc.*, No. 14-41014, 2016 WL 3884799 (Bankr. S.D. Ill. Apr. 7, 2016) (holding that unsecured trade creditors in a separate class from judgment claims is not unfair discrimination under § 1129(b)).  ). *See also In re Sea Trail Corp.*, No. 11-07370-8-SWH, 2012 WL 5247175 (Bankr. E.D.N.C. Oct. 23, 2012) (not discriminatory to treat trade claims separately than shareholder loan claims); *In re American HomePatient, Inc.*, 298 B.R. 152 (Bankr. M.D. Tenn. 2003), *subsequently aff'd*, 420 F.3d 559 (6th Cir. 2005) (not discriminatory to treat trade claims differently from lenders); *In re Great Bay Hotel & Casino, Inc.*, 251 B.R. 213 (Bankr. D.N.J. 2000) (same).

The Plan pays Class 3 trade creditors in full within a year of the effective date at the federal judgment rate.  Pursuant to the plan settlement, Class 2 is paid over sixteen years at the contract rate of interest.  Class 4 Litigation Claimants (if any amount is owed with respect to those who voted against the Plan, which the Debtors do not expect) are to be paid in full in a quicker time period- ten years- at the federal judgment rate (the same as Class 3).  The Plan pays as close as possible to the original expectations of all creditors.

Courts have consistently held that unliquidated, disputed litigation claims can be classified separately from undisputed, liquidated claims. *See, In re Adelphia Commc'ns Corp*, 368 B.R. 140, 247 (Bankr. S.D.N.Y. 2007) (permitting separate classification of generally liquidated trade claims and other unsecured claims which were mostly unliquidated litigation and rejection damages because "[c]lassifying Trade Claims apart from Other Unsecured Claims insulates the former against the risk that reserves for the latter are not capable of precise estimation"), appeal dismissed,

367 B.R. 84 (S.D.N.Y. 2007), appeal dismissed, 371 B.R. 660 (S.D.N.Y. 2007); *In re U.S. Mineral Prods. Co.*, No. 01-2471(JKF), 2005 WL 5898300, at * 23 (Bankr. D. Del. Nov. 29, 2005) ("The Plan properly classifies Litigation Claims in a separate class.") (citations omitted); *In re Dow Corning Corp.*, 244 B.R. 634, 647 (Bankr. E.D. Mich. 1999), aff'd, 255 B.R. 445 (E.D. Mich. 2000), aff'd and remanded, 280 F.3d 648 (6th Cir. 2002) ("Moreover, there seems to be little dispute that unsecured claims can be substantially dissimilar in nature. In this case for instance, there is no question that while disputed and unliquidated personal injury breast-implant claims and undisputed and liquidated commercial claims are both unsecured, they may be separately classified."); *In re Gen. Teamsters, Warehousemen & Helpers Union Local* 890, 225 B.R. 719, 735 (Bankr. N.D. Cal. 1998) (stating that a plan does not discriminate unfairly as to classification when there were three classes of unsecured nonpriority creditors: convenience claims, undisputed and liquidated contract claims, and disputed and unliquidated tort claims); *In re Rochem, Ltd.*, 58 B.R. 641, 643 (Bankr. D.N.J. 1985) (approving discriminatory treatment of an unliquidated tort claim and trade claims). *See also, In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) ("We immediately note the reasonableness of distinguishing the claims of physicians, medical malpractice victims, employee benefit plan participants, and trade creditors.").

The Trust's unfair discrimination argument also is not convincing. *See* 7 Collier on Bankruptcy ¶ 1129.04[3][b][i] (15th ed. rev. 1997) (**if a large tort claim dwarfs all other unsecured claims, including those of trade creditors, it makes sense to separately classify the two and pay the trade or other creditors first or faster**) and cases cited therein at n. 22. Here, to the extent the litigation claimants have allowed claims, they are to be paid in full with interest, which supports a finding that there has been no unfair discrimination

All Claims in Class 4a and 4b, respectively, are similar and receive the same treatment under the Plan. The Plan provides that each Holder of a Claim in Class 4a and 4b shall receive or retain on account of such Claim property of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim. Thus, there is no unfair discrimination against any Holder of a Class 4a or 4b Claim.

### B. The Plan Is Fair and Equitable with Respect to the Litigation Claimants

For the Plan to be "fair and equitable" with respect to unsecured creditors, such as the Class 4a and 4b Litigation Claimants, it must provide that each holder of a claim of such class receive, or retain on account of such claim, property of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim. *See* 11 U.S.C. §§ 1129(b)(2)(B)(i).

The Plan provides that each Holder of a Claim in Class 4a and 4b shall receive payment in full on account of allowed claims, over 10 years, with federal judgment rate interest (the same rate as Class 3 a). Accordingly, such creditors shall retain on account of such allowed Claims property of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim.

## II. THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN SECTION 1129(a) OF THE BANKRUPTCY CODE

Section 1129 of the Bankruptcy Code governs confirmation of a plan of reorganization and sets forth the requirements that must be satisfied in order for a plan to be confirmed. Pursuant to section 1129(a) of the Bankruptcy Code, a bankruptcy court shall confirm a plan of reorganization only if all of the following requirements are met:

1. The plan complies with the applicable provisions of title 11 (section 1129(a)(1));

2. The proponent of the plan complies with the applicable provisions of title 11 (section 1129(a)(2));

3. The plan has been proposed in good faith and not by any means forbidden by law (section 1129(a)(3));

4. Any payment made or to be made by the proponent, by the debtors, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the cases, or in connection with the plan and incident to the cases, has been approved by, or is subject to the approval of, the court as reasonable (section 1129(a)(4));

5. The proponent of the plan has: (i)(A) disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtors, an affiliate of the debtors participating in a joint plan with the debtors, or a successor to the debtors under the plan, and (B) the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy; and (ii) the proponent has disclosed the identity of any insider that will be employed or retained by the reorganized debtors and the nature of any compensation for such insider (section 1129(a)(5));

6. To the extent that the debtors are subject to the jurisdiction of any regulatory commission, any rate change provided for in the plan has been approved by, or is subject to the approval of, such regulatory commission (section 1129(a)(6));

7. With respect to each impaired class of claims or interests, each holder of a claim or interest of such class has either accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code on such date (section 1129(a)(7));

8. Each class of claims or interests has either accepted the plan or is not impaired under the plan (section 1129(a)(8));

9. The treatment of administrative expense and priority claims under the plan complies with the provisions of section 1129(a)(9);

10. If a class of claims is impaired under the plan, at least one impaired class of claims has accepted the plan, determined without including the acceptances by any insiders holding claims in such class (section 1129(a)(10));

11. Confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor, unless such liquidation or reorganization is proposed in the plan (section 1129(a)(11));

12. The plan provides for payment on the effective date of all fees payable under 28 U.S.C. § 1930 (section 1129(a)(12)); and

13. The plan provides, if applicable, for the continued payment of certain retiree benefits for the duration of the period that the debtors have obligated themselves to provide such benefits (section 1129(a)(13)).

11 U.S.C. § 1129(a).

The Plan satisfies each of these requirements except for section 1129(a)(8), except with respect to Classes 4a and 4b.  Claims in Classes 1, 5a and 5b are unimpaired.  As a result, Holders of such Claims are deemed to have accepted the Plan.  *See* 11 U.S.C. § 1126(f) and Plan § 3.02. Claims in Classes 2 and 3a are impaired and each of these Classes has voted to accept the Plan. As discussed above, in this instance the Plan Debtors may seek to implement the so called "cramdown" provisions of section 1129(b)(1) of the Bankruptcy Code with respect to the Class 4 Claims.  As the Plan satisfies the requirements of sections 1129(a) (other than subsection (8) thereof) and 1129(b) of the Bankruptcy Code, the Plan should be confirmed.

      A.     The Plan Satisfies the Requirements of
           Section 1129(a)(1) of the Bankruptcy Code

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).  Although broadly drafted, the legislative history and the case law make clear that this provision is directed at compliance with sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re Texaco Inc.,* 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1) [of the Bankruptcy Code], reference must be made to [Bankruptcy] Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization."), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y. 1988).

      1.     The Plan Complies with Section 1122 of the Bankruptcy Code

The Plan's classification structure is proper and in accordance with section 1122(a) of the Bankruptcy Code.  Specifically, the Plan divides Claims and Interests as follows:

13

| Class | Type of Claim or Interest |
|---|---|
| Unclassified | Administrative Expense Claims |
| Unclassified | Fee Claims |
| Unclassified | United States Trustee Fees |
| Unclassified | Priority Tax Claims |
| Class 1 | Priority Non-Tax Claims Against both Plan Debtors |
| Class 2 | Noteholder Claims Against Novation |
| Class 3a | General Unsecured Claims against Novation |
| Class 3b | General Unsecured Claims against NovaStar Mortgage |
| Class 4a | RMBS Litigation Claims against Novation |
| Class 4b | RMBS Litigation Claims against NovaStar Mortgage |
| Class 5a | Interests in Novation |
| Class 5b | Interests in NovaStar Mortgage |

Section 1122(a) of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class if such claim or interest is substantially similar to the other claims or interests of such class. 11 U.S.C. § 1122(a). "Substantially similar" generally has been interpreted to mean similar in legal character to other claims against a debtor's assets or to other interests in a debtor. *See In re Drexel Burnham Lambert Group Inc.,* 138 B.R. 714, 715- 716 (Bankr. S.D.N.Y. 1992), *order aff 'd,* 140 B.R. 347 (S.D.N.Y. 1992) ("*Drexel Burnham Lambert I*").

Section 1122(a) of the Bankruptcy Code does "not require that similar classes be grouped together, but merely that any group be homogenous." *Drexel Burnham Lambert I,* 138 B.R. at 715. *See also In re Johnson,* 69 B.R. 726, 728 (Bankr. W.D.N.Y. 1987); *In re 11,111, Inc.,* 117 B.R. 471, 476 (Bankr. D. Minn. 1990) ("while § 1122(a) requires that a given class in a plan of reorganization consist of substantially similar claims, all substantially similar claims need not be included in the same class"); *In re AG Consultants Grain Div., Inc.,* 77 B.R. 665, 674 (Bankr. N.D. Ind. 1987) (same).

Importantly, a plan proponent is afforded significant flexibility in classifying claims under section 1122(a) so long as there is a reasonable basis for the classification structure. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987); *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 586 (6th Cir. 1986).

14

As discussed above, in the instant case, the Plan Debtors have a legitimate and reasonable basis for establishing separate classes of unsecured claims, as the three classes represent different types of creditors with radically different kinds of claims unique to each separate class. The Class 4 claimants are unliquidated, "unknown" litigation claimants with disputed claims. The Class 2 Claims arise on account of financial debt governed by freely bargained for long-term indentures. The Indentures have substantial ongoing covenants and long term repayment obligations. Class 3 Claims are ordinary course general unsecured and trade creditors. These three classes represent distinctly different kinds of claims for different kinds of creditors. Separate classification for bonds, general unsecured claims, and litigation claims is not only reasonable, but common in chapter 11 cases. *See*, cases cited in Section I. A, supra.

The Plan's classification structure is straightforward and complies with section 1122(a) of the Bankruptcy Code. The Claims and Interests in each Class described above are substantially similar in nature to the other Claims and Interests in such Class. Accordingly, the classification structure embodied in the Plan complies with section 1122 of the Bankruptcy Code.

       2.       The Plan Satisfies the Requirements of
               Section 1123(a) of the Bankruptcy Code

To satisfy section 1129(a)(1) of the Bankruptcy Code, the Plan must comply with section 1123(a) of the Bankruptcy Code, which sets forth seven mandatory requirements for every chapter 11 plan.

Specifically, this section requires that a plan (i) designate classes of claims and interest; (ii) specify unimpaired classes of claims and interests; (iii) specify the treatment of any class of claims or interests that is impaired; (iv) provide the same treatment for each claim or interest of a particular class; (v) provide adequate means for the Plan's implementation; (vi) provide for prohibition of nonvoting equity securities and provide an appropriate distinction of voting power

among classes or securities; and (vii) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.  *See* 11 U.S.C § 1123(A).  As set forth below, the Plan complies with each such requirement.

    (a)  <u>The Plan Designates Classes of Claims —11 U.S.C. § 1123(a)(1)</u>

   Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims and interests, other than claims of the kinds specified in sections 507(a)(1) (administrative expense claims), 507(a)(2) (claims arising during the "gap" period in an involuntary case), and 507(a)(8) of the Bankruptcy Code (unsecured tax claims). *See* 11 U.S.C. § 1123(a)(1).  Article II of the Plan designates five (5) Classes of Claims and Interests, not including Claims of the kinds specified in sections 507(a)(1), (2) and (8) of the Bankruptcy Code.  Thus, the Plan complies with the requirements of section 1123(a)(1) of the Bankruptcy Code.

    (b)  <u>The Plan Specifies Unimpaired Classes — 11 U.S.C. § 1123(a)(2)</u>

   Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).  Section 2.04 of the Plan specifies the Classes of Claims that are unimpaired under the Plan — specifically, Class 1, consisting of all Priority Non-Tax Claims and Class 5a and 5b, consisting of all Interests in Novation and NovaStar Mortgage, respectively.  Therefore, the Plan complies with the requirements of section 1123(a)(2) of the Bankruptcy Code.

    (c)  The Plan Adequately Specifies the Treatment of
        <u>Impaired Classes — 11 U.S.C. § 1123(a)(3)</u>

   Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3).  Article

III of the Plan specifies the treatment of Claims and Interests that are impaired under the Plan. Thus, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

(d)    The Plan Provides the Same Treatment for Claims or Interests Within Each Class — 11 U.S.C. § 1123(a)(4)

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the "same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4). The Plan does so provide, and thus complies with section 1123(a)(4) of the Bankruptcy Code.

(e)    The Plan Provides Adequate Means for its Implementation — 11 U.S.C. § 1123(a)(5)

Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Article V of the Plan sets forth the means for implementation of the Plan, which the Plan Debtors submit are more than adequate. Certain of these implementation mechanisms include, for example, procedures for or respecting:

i.    Corporate Action;[4] and

ii.    Effective Date Transactions, including Entry into the Stock Purchase Transaction and Effective Date Funding.[5]

Here, the Plan is effective as of the closing of the HCS Acquisition and the issuance of the Amended Senior Notes.

Based upon the foregoing, the Plan Debtors respectfully submit that the Plan contains appropriate implementation provisions and complies with the requirements of section 1123(a)(5) of the Bankruptcy Code.

(f)    11 U.S.C. § 1123(a)(6) Is Not Applicable

Section 1123(a)(6) of the Bankruptcy Code provides that a plan must:

---

[4] *See* Plan, § 5.01.

[5] *See* Plan, § 5.02.

> provide for the inclusion in the charter of the debtor, if the debtor
> is a corporation, . . . of a provision prohibiting the issuance of
> nonvoting equity securities, and providing, as to the several classes
> of securities possessing voting power, an appropriate distribution
> of such power among such classes, including, in the case of any
> class of equity securities having a preference over another class of
> equity securities with respect to dividends, adequate provisions for
> the election of directors representing such preferred class in the
> event of default in the payment of such dividends.

11 U.S.C. § 1123(a)(6).[6]  Here, no equity securities are issued under the Plan.  Therefore, the Plan

Debtors submit that section 1123(a)(6) is inapplicable.

(g)     The Plan Contains Appropriate Provisions
Respecting the Selection of Post-Confirmation
<u>Directors and Officers — 11 U.S.C. § 1123(a)(7)</u>

Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions

that are consistent with the interests of creditors and equity security holders and with public policy

with respect to the manner of selection of any officer, director, or trustee under the plan and any

successor to such officer, director or trustee."   11 U.S.C. § 1123(a)(7).   This provision is

supplemented by Section 1129(a)(5) of the Bankruptcy Code, which directs the scrutiny of the

Court to the manner by which management of the reorganized corporation is to be chosen to

provide adequate representation of those whose investments are involved in the organization.

Pursuant to Section 5.04 of the Plan, on the Effective Date, the board of directors of the

Reorganized Plan Debtors shall consist of those individuals identified in the Plan Supplement.

Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy

Code, as it does all of the other requirements of section 1123(a) of the Bankruptcy Code.

3.     <u>The Plan Complies with Section 1123(b) of the Bankruptcy Code</u>

---

[6] The purpose of section 1123(a)(6) is to "assure that creditors who are forced to take stock in a reorganized company will be entitled to exercise full voting control and have a voice in the selection of management that will protect their interests."  Ronald W. Goss, <u>Chapter 11 of the Bankruptcy Code: An Overview for the General Practitioner</u>, 4 Utah B.J. 6, 10 (1991).

18

Section 1123(b) of the Bankruptcy Code specifies certain provisions that may be included in a plan of reorganization. The Plan contains certain of the provisions specifically contemplated by section 1123(b) of the Bankruptcy Code, including provisions regarding (a) the impairment and unimpairment of Classes of Claims and Interests as provided for in section 1123(b)(1) of the Bankruptcy Code (*see* Article II of the Plan), (b) the assumption or rejection of executory contracts and unexpired leases as provided for in section 1123(b)(2) of the Bankruptcy Code (*see* Article X of the Plan), and (c) the distribution of the proceeds of the Debtors' estates' assets as provided for in section 1123(b)(4) of the Bankruptcy Code (*see* Article VIII of the Plan).

Other provisions of the Plan are permissible pursuant to the authority granted in section 1123(b)(6) of the Bankruptcy Code, which permits a plan to include other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1123(b)(6). These include the Bankruptcy Court's retention of jurisdiction as to specified issues, as well as the Bankruptcy Court's power to enjoin actions against non-debtor third parties when such injunction is integral to the confirmation of the Plan. No party in interest has objected to confirmation of the Plan on the basis that it does not comply with section 1123(b) of the Bankruptcy Code.

Because the Plan meets all of the requirements of sections 1122 and 1123 of the Bankruptcy Code, it complies with section 1129(a)(1) of the Bankruptcy Code.

 B. The Plan Debtors Have Complied With the Provisions of Title 11 as Required by Section 1129(a)(2) of the Bankruptcy Code

Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent "compl[y] with the applicable provisions of [title 11]." 11 U.S.C. § 1129(a)(2). Generally, the inquiry under section 1129(a)(2) of the Bankruptcy Code focuses on whether the plan proponent has complied with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code. *See In re WorldCom, Inc.*, No. 02–13533, 2003 WL 23861928, at 25-26 (Bankr. S.D.N.Y.

19

Oct. 31, 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code.  These sections provide for the appropriate manner of disclosure and solicitation of plan votes.")  (internal citations omitted), *aff'd in relevant part*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); H.R. Rep. No. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; S. Rep. No. 95-989, at 126 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 (section 1129(a)(2) of the Bankruptcy Code "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure").

On April 17, 2017, the Plan Debtors commenced solicitation of votes with respect to the First Amended Plan. One month later, on May 17, 2017, the Debtors filed their Second Amended Plan.  The Plan incorporated a settlement between the Plan Debtors and the Class 2 Noteholders, whereby it improved the treatment of the Class 2 Noteholders primarily by providing them (i) contract rate interest; and (ii) a first priority lien on the Debtors' assets' and (iii) reimbursement of outstanding fees and expenses subject to a cap.  Pursuant to this Court's instructions, on May 18, the Plan Debtors submitted the Plan to all voting creditors and advised creditors that the voting deadline has been extended to May 26, 2017.[7]

Accordingly, the Plan Debtors respectfully submit that they have complied with the provisions of the Bankruptcy Code and, in particular, the provisions of section 1125, and therefore have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  No party in interest

---

[7] The Solicitation Procedures Order had originally established May 22, 2017 at 4:00 p.m. (prevailing Eastern time) as the deadline for submitting of ballots to accept or reject the First Amended Plan [Dkt, No. 408].  In the wake of filing the Plan as amended on May 17, 2017, this Court extended the deadline to May 26, 2017.

has objected to confirmation of the Plan on the basis that the Plan fails to meet the requirements of section 1125 of the Bankruptcy Code.

      C.      Section 1129(a)(3) Has Been Satisfied Because the Plan Has Been
              Proposed in Good Faith and Not by any Means Forbidden by Law

Section 1129(a)(3) of the Bankruptcy Code requires that the Plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Although the term "good faith" is not defined in the Bankruptcy Code, courts within this Circuit and elsewhere have indicated that "for purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code" in light of the particular facts and circumstances of the case. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004); *In re Armstrong World Indus.*, 348 B.R. 136, 147 (Bankr. D. Del. 2006); *In re PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.* 788 F.2d 143, 150 n. 5 (3d Cir. 1986) & *In re Madison Hotel Associates*, 749 F.2d 410, 424-25 (7th Cir. 1984)); *In re Burns & Roe Enter.*, 2009 U.S. Dist. LEXIS 13574, at *78 (D.N.J. Feb. 20, 2009). This inquiry typically focuses on whether a plan has been proposed with a legitimate purpose and with a basis for expecting that reorganization consistent with the Bankruptcy Code's objectives can be effectuated. *See*, *e.g.*, *Zenith*, 241 B.R. 92 (Bankr. D. Del. 1999) 107-08 (quoting *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988)) (finding good faith where the plan was "proposed with the legitimate purpose of restructuring [the Debtor's] finances to permit [the debtor] to reorganize successfully…exactly what chapter 11 of the Bankruptcy Code was designed to accomplish)."

"[D]enial of confirmation for failure to satisfy section 1129(a)(3) should be reserved for only the most extreme of cases." 7 Collier on Bankruptcy § 1129.02; *see also In re Sound Radio, Inc.*, 93 B.R. 849 at 853 ("To find a lack of 'good faith' courts have examined whether the debtor

4182019-6

intended to abuse the judicial process and the purposes of the reorganization provisions. A finding of a lack of good faith is especially appropriate when no realistic possibility of an effective reorganization exists and it is evident that the debtor seeks to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."). Good faith is not lacking simply because a plan "may not be one which the creditors would themselves design and indeed may not be confirmable." *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 803 (5th Cir. 1997); *In re Montgomery Court Apartments, Ltd.*, 141 B.R. 324, 329 (Bankr. S.D. Ohio 1992) ("The Court fails to see how Greyhound's unhappiness with the Plan's terms can give rise to a finding of bad faith on the part of the Debtor under 11 U.S.C. § 1129(a)(3). Chapter 11 plans routinely alter the contractual rights of parties"); *Zenith*, 241 B.R. at 107 (fundamental fairness not offended by one group receiving better treatment than another under plan). Throughout these Cases, the Plan Debtors and their management have honored and upheld their fiduciary duties to all stakeholders.

The Plan Debtors believe that the Plan maximizes the value of their estates for their creditors and all other stakeholders. Moreover, it embodies the resolution of a long-standing dispute with the Debtors' largest creditors, the Class 2 Noteholders. Accordingly, the Plan has been proposed in "good faith" and not by any means forbidden by law, and satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Plan has been proposed with the legitimate purpose of reorganizing and continuing the Plan Debtors' business and maximizing the returns available to creditors and other parties in interest. Among other things, the Plan embodies the Purchase Agreement, which, for the reasons discussed above and in supporting testimony, is in the best interest of creditors or the Plan Debtors' estates and all of the Plan Debtors' stockholders. In addition, as disclosed in the Disclosure Statement, the Plan Debtors believe that

4182019-6

creditors will receive significantly greater and more expeditious distinction under the Plan than they would receive through a chapter 7 liquidation.

The Plan is the part of extensive arm's length negotiations among the Plan Debtors, the Seller Parties, the Class 2 Noteholders and other stakeholders, as well as negotiations with numerous other parties, including but not limited the Creditors' Committee.  The acceptance by all classes entitled to vote demonstrates that the Plan has been proposed in good faith and for proper purposes.

> **D.**    **The Plan Provides for Bankruptcy Court Approval of Payment**
> **for Services and Expenses — 11 U.S.C. § 1129(a)(4)**

Section 1129(a)(4) of the Bankruptcy Code requires that payments for services or costs and expenses incurred in or in connection with a chapter 11 case, or in connection with a plan and incident to the case, either be approved by or be subject to approval of the court as reasonable. *See* 11 U.S.C. § 1129(a)(4).   This section requires that all payments of compensation and reimbursement of expenses to professionals retained in a debtor's case be subject to bankruptcy court review and approval as to the reasonableness of such payments.

Section 3.02 of the Plan provides for payment of Allowed Administrative Expense Claims in full.  Section 3.02 of the Plan also sets forth procedures for filing Fee Claims and procedures for the payment of professional fees.   In addition, Article XI of the Plan provides for the Bankruptcy Court's retention of jurisdiction to hear and determine all applications for compensation and reimbursement of expenses of Professionals in these Cases.

> **E.**    **The Plan Debtors Have Complied with Section 1129(a)(5)**
> **by Disclosing all Necessary Information Regarding Managers**
> **and Officers of the Reorganized Plan Debtors**

Section 1129(a)(5)(A) of the Bankruptcy Code requires that the plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as

a director, officer, or voting trustee of the debtor . . . or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5)(A)(i) & (ii).  Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B).

Pursuant to Section 5.04 of the Plan, on the Effective Date, the board of directors of the Reorganized Plan Debtors shall consist of those individuals identified in the Plan Supplement.  The appointment to, or continuance in, office of such directors is consistent with the interests of creditors and interest holders and with public policy.  The directors of the Reorganized Plan Debtors are competent, and, as former directors of the Plan Debtors, have relevant and solid business and industry expertise, and will give to the Reorganized Plan Debtors their continuing insight into running the business.

The appointment of management as provided for in the Plan is consistent with the interest of the holders of Claims and Interests and with public policy.  Accordingly, the Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code.

F.     The Plan Does Not Contain Rate Changes Subject to the
       Jurisdiction of any Governmental Regulatory Commission —
       11 U.S.C. § 1129(a)(6)

Section 1129(a)(6) of the Bankruptcy Code requires that any governmental regulatory commission having jurisdiction over the rates charged by the post-confirmation debtor in the operation of its business approve any rate change provided for in the plan.  Because the Plan does not propose any such rate changes, the provisions of section 1129(a)(6) of the Bankruptcy Code have been satisfied.

24

G.    The Plan Is in the Best Interests of Creditors — 11 U.S.C. § 1129(a)(7)

Section 1129(a)(7) of the Bankruptcy Code requires that:

> With respect to each *impaired* class of claims or interests --
>
> (A)    each holder of a claim or interest of such class --
>
>> (i)    has accepted the plan; or
>>
>> (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title . . . on such date.

11 U.S.C. § 1129(a)(7) (emphasis added).

This section is commonly known as the "best interests" test. By its terms, it applies only to Holders of Claims of those impaired classes that have not accepted a plan of reorganization. 11 U.S.C. § 1129(a)(7). Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in a Class that is not impaired is conclusively presumed to have accepted the Plan. Under the Plan, Claims in Class 1, 5a and 5b are unimpaired under section 1124 of the Bankruptcy Code, and conclusively presumed to have accepted the Plan. Impaired Classes 2 and 3a have voted to accept the Plan.

The Disclosure Statement and Exhibit C thereto contain an appropriate liquidation analysis (the "Liquidation Analysis") that establishes that the best interests test is satisfied by the Plan. *See* Disclosure Statement, Exhibit C. The Liquidation Analysis demonstrates that in a hypothetical chapter 7 liquidation, creditors in all voting classes would receive less than they do under the Plan. A Court, in considering whether a Plan is in the "best interest" of creditors, is not required to consider any alternative to the Plan other than the dividers projected in a liquidation of all of the debtor's assets. *In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012), *stay pending appeal denied* (3rd Circ. 12-2966) (June 27, 2012) *and aff'd*, 532 Fed. Appx. 264 (3d Cir. 2013) *and aff'd*, 729

25

F.3d 311, 58 Bankr. Ct. Dec. (CRR) 113 (3d Cir. 2013) *and aff'd*, 729 F.3d 332, 58 Bankr. Ct.

Dec. (CRR) 112 (3d Cir. 2013) *and appeal dismissed*, (3rd Cir. 12-1402) (Feb. 3, 2014) *and appeal*

*dismissed*, (3rd Circ. 12-2924) (Feb. 3, 2014).

Thus, the Plan satisfies the best interests test as to all voting classes, as the Liquidation

Analysis demonstrates, the recovery for such classes is not less than the estimated recovery that

would be available in a chapter 7 liquidation. *See* Disclosure Statement, Exhibit C.

H.      The Plan Satisfies Section 1129(a)(8) with
        <u>Respect to all Classes Except Classes 4a and 4b</u>

Pursuant to section 1129(a)(8) of the Bankruptcy Code, each class of claims and interests

under a plan must either (a) have accepted the plan, or (b) be rendered unimpaired under the plan.

11 U.S.C. § 1129(a)(8).  Whether a class of claims is impaired under a plan is determined by

section 1124 of the Bankruptcy Code.

Under the Plan, Classes 1, 5a and 5b are not impaired under the Plan and all Holders of

Claims in such Classes are conclusively presumed to have accepted the Plan. *See* 11 U.S.C.

§§ 1124 and 1126(f); *Great W. Bank & Trust v. Entz-White Lumber &  Supply, Inc. (In re Entz-*

*White Lumber & Supply, Inc.)*, 850 F.2d 1338, 1340 n.3 (9th Cir. 1988).  Classes 2 and 3a have

voted to accept the Plan by the majority required by the Bankruptcy Code for each such Class.

Notwithstanding the fact that Class 4a and 4b reject the Plan, the Plan may be confirmed pursuant

to section 1129(b) of the Bankruptcy Code as set forth in Section I *infra*.

I.      The Plan Provides for Payment in Full of all
        <u>Allowed Priority Claims — 11 U.S.C. § 1129(a)(9)</u>

Section 1129(a)(9) of the Bankruptcy Code requires that, except to the extent that the

holder of a particular claim agrees to a different treatment of such claim, the plan provide that:

(A)      with respect to a claim of a kind specified in section
         507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the

26

effective date of the plan, the holder of such claim will receive . . . cash equal to the allowed amount of such claim;

(B)     with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder . . . will receive -- (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C)     with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive . . . regular installment payments in cash -- (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief . . . and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan . . . .

*See* 11 U.S.C. § 1129(a)(9).

Section 3.02 of the Plan provides that, except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the Plan Debtors shall pay to each Holder of an Allowed Administrative Claim cash in an amount equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, and (ii) the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable; provided, however, that Allowed Ordinary Course Administrative Claims may be paid by the Plan Debtors in the ordinary course of business of the Reorganized Plan Debtors consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

27

Section 3.02 of the Plan provides that, except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Plan Debtors, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled to be calculated in accordance with section 511 of the Bankruptcy Code). All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business. The Reorganized Plan Debtors shall retain the right to pay any Allowed Priority Tax Claim, or any remaining balance of such claim, in full at any time without premium or penalty.

Therefore, the Plan Debtors submit that the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

J.   The Plan Has Been Accepted by at Least One Impaired Class of Claims that Is Entitled to Vote — 11 U.S.C. § 1129(a)(10)

Section 1129(a)(10) of the Bankruptcy Code requires that, if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan, as determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10). Classes 2 and 3a are each impaired, do not consist of insiders and have accepted the Plan. Therefore, the Plan meets the requirements of 11 U.S.C. § 1129(a)(10).

4182019-6

K.    The Plan Is Feasible — 11 U.S.C. § 1129(a)(11)

Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  This requirement, commonly known as the "feasibility" standard, requires that "the Plan is workable and has a reasonable likelihood of success." *Drexel Burnham Lambert II*, 138 B.R. at 762.  "It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success." *Id.* (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[1 1], at 1129-54 (15th Ed. 1991)); *see also In re Cellular Info. Sys. Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) ("the plan proponent need only demonstrate that there exists the reasonable probability that the provisions of the Plan can be performed.") (internal citation omitted).

For the purposes of determining whether the Plan is feasible, the Plan Debtors have, among other things, projected the future financial performance (the "Financial Projections") of the Reorganized Plan Debtors. *See* Disclosure Statement, Exhibit B.  As set forth in the record at the confirmation hearing, the Plan Debtors believe that they will have sufficient cash and availability under their capital commitments and exit financing to meet their obligations under the Plan. Therefore, the Plan Debtors respectfully submit that the Plan satisfies the feasibility standard and requirements of section 1129(a)(11) of the Bankruptcy Code.

L.    The Plan Provides for Full Payment of all Statutory Fees
as Required by 11 U.S.C. § 1129(a)(12)

Section 1129(a)(12) of the Bankruptcy Code requires that fees payable under 28 U.S.C. § 1930 have been paid or are provided under the plan to be paid on its effective date. Section 13.12 of the Plan provides that, on the Effective Date, and thereafter as required, the Reorganized Plan

29

Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code. Thus, the Plan complies with the requirements of section 1129(a)(12) of the Bankruptcy Code.

> M.   The Plan Provides for the Continuance of Retiree Benefit
>      Obligations as Required by 11 U.S.C. § 1129(a)(13)

Section 1129(a)(13) of the Bankruptcy Code requires a Plan to provide for the continuation of retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. The Plan Debtors do not have retiree benefits to pay (within the meaning of section 1114 of the Bankruptcy Code). Accordingly, the Plan meets the requirements of section 1129(a)(13) of the Bankruptcy Code.

## III.   THE PLAN SETTLEMENT WITH THE CLASS 2 NOTEHOLDERS AND THE CREDITORS' COMMITTEE SHOULD BE APPROVED

Bankruptcy Rule 9019 states, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement ...." Fed. R. Bankr. P. 9019(a). As noted above, section 1123(b)(3) of the Bankruptcy Code expressly provides that a chapter 11 plan may "provide for—(A) the settlement or adjustment of any claim or interest belonging to the debtor or the estate ...." 11 U.S.C. § 1123(b)(3)(A).

To be approved, it is well-established that the settlement need only be "fair and equitable." *In re Final Analysis, Inc.*, 417 B.R. 332, 341 (Bankr. D. Md. 2009); *In re Toussaint*, No. 01-12690-TJC, 2008 WL 427278, at *5 (Bankr. D. Md. Feb. 13, 2008); *see also In re Capmark Fin. Grp., Inc.*, 438 B.R. 471, 475 (Bankr. D. Del. 2010). A bankruptcy court need not decide the numerous issues of law and fact raised by the settlement and it need not be convinced that the proposed settlement is the best possible. *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) (*quoting In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004)). Moreover, a bankruptcy court is not required to conclusively determine the value of the claims

being settled, or have all of the information necessary to resolve the dispute being settled. *In re ID Liquidation One, LLC*, 555 Fed. Appx. 202, 207 (3d Cir. 2014) (citing *In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997)). Rather, a bankruptcy court is only required to determine "whether the settlement falls above the lowest point in the range of reasonableness." (citing *Capmark*, 438 B.R. at 515) When evaluating the settlement, courts generally look to "whether the settlement as a whole is reasonable." *In re Washington Mutual, Inc.*, 442 B.R. 314, 329 (Bankr. D. Del. 2011); *see also In re Health Diagnostic Lab., Inc.*, No. 15-32919, 2016 WL 6068812, at *5 (Bankr. E.D. Va. Oct. 14, 2016); *In re NII Holdings, Inc.*, 536 B.R. 61, 105 (Bankr. S.D.N.Y. 2015) ("[A]s mandated by precedent, the Court will undertake its own analysis of each component of the Settlement … and of the Settlement as a whole ....").

The settlement resolves the lengthy and costly dispute between the Plan Debtors and its largest creditors: the Class 2 Noteholders.  These disputes concerned, among other things, the amount of interest necessary to cure the Noteholders' claims (with the Class 2 Noteholders ultimately accepting a $5.8 million cure, even though they argued the amount was $10.8 million), the appropriate rate of pendency and, if there was not a reinstatement, post-confirmation cram down interest rate,  and the length of maturity of the post-confirmation debt. The 9019 settlement also resolves complex valuation disputes, and also allows for the consummation of the HCS Transaction.  Until the settlement, the Debtors, Class 2 Noteholders and the Creditors' Committee were preparing for a protracted disputed confirmation hearing, including expert testimony on a number of the complex issues in dispute.

The Plan Debtors believe that the settlement embodied in the Plan with respect to the Class 2 Noteholders and the Creditors' Committee represent significant concessions from each of the settling parties, are fair and equitable, will avoid the need for lengthy and fact-intensive litigation

31

that could result in significant damage to the Debtors' business or even liquidation. Therefore the settlement falls well above the lowest point in the range of reasonableness. Accordingly, the Plan Debtors submit that the settlement should be approved pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 in connection with confirmation of the Plan and entry of the Confirmation Order.

## IV. THE POST-EFFECTIVE DATE PROTECTIONS AFFORDED TO THE PLAN DEBTORS AND CERTAIN THIRD PARTIES THAT MADE CONTRIBUTIONS TO THE CONFIRMATION PROCESS ARE APPROPRIATE AND CONSISTENT WITH ESTABLISHED PRECEDENT

### A. The Discharge, Injunction, Release and Exculpation Provisions Embodied in the Plan Are Permissible and Should Be Approved

Article X of the Plan includes customary discharge, release, exculpation, and injunction provisions that are typically afforded to debtors, reorganized debtors and certain third parties. These discretionary provisions are appropriate because, among other things, they are (i) integral to the Plan; (ii) fair, equitable and reasonable and in the best interests of the Plan Debtors and their estates; and (iii) consensual in nature.

### B. The Injunction and Discharge Provisions Set Forth in Article X of the Plan Comply with the Bankruptcy Code

Section 10.05 of the Plan provides for an injunction which, in general, enjoins all Persons that have held, currently hold, or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the Plan from taking certain actions against the Plan Debtors, the Reorganized Plan Debtors or their respective property on account of such Claims, Equity Interests or other obligations. This injunction is necessary to preserve and enforce the releases in the Plan and the exculpation provisions, and it is narrowly tailored to achieve that purpose. Accordingly, the Plan Debtors submit that the injunction provision should be approved.

4182019-6

Section 10.04 of the Plan provides for the broad discharge contemplated by section 1141 of the Bankruptcy Code, which provides, in relevant part:

> the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

As evidenced by the votes accepting the Plan, the Plan Debtors respectfully submit that the discharge and injunction provisions contained in the Plan are reasonable and appropriate, consistent with the Bankruptcy Code, and should be approved.

C. The Releases by the Plan Debtors in Section 10.06 of the Plan Are Fair, Reasonable, and in the Best Interests of the Estates

Section 10.06 of the Plan provides for releases of Claims and causes of action belonging to the Plan Debtors, the Reorganized Plan Debtors and their estates (the "Debtors' Releases"), as of the Effective Date, by such parties against the Released Parties.[8] A debtor may release claims in a plan "if the release is a valid exercise of the Plan Debtors' business judgment, is fair, reasonable, and in the best interests of the estate." *U.S. Bank Nat'l Assoc.* v. *Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) (citing *In re DBSD North America, Inc.*, 419 B.R. 149, 217 (Bankr. S.D.N.Y. 2009)). *See also* 11 U.S.C. § 1123(b)(3)(A). In determining whether the exercise of that business judgment is valid, courts consider the

---

[8] The "Released Parties" are the Debtor-Released Parties (collectively, the Plan Debtors' directors, officers, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their capacity as such, and to the extent such Persons occupied any such positions at any time on or after the Petition Date) and the Creditors' Committee and its members, advisors and professionals (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons), each solely in its capacity as such.

33

4182019-6

"specific facts and equities of each case," typically by reference to the five factors outlined in *In re Zenith Electronics Corp.* 241 B.R. 92 (Bankr. D. Del. 1999). *See Spansion*, 426 B.R. at 142-43 (citing *Zenith*, 241 B.R. at 110).

Those factors are: (i) an identity of interest between the debtor and non-debtor, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (ii) a substantial contribution to the plan by the non-debtor; (iii) the necessity of the release to the reorganization; (iv) the overwhelming acceptance of the plan and release by creditors and interest holders; and (v) the payment of all or substantially all of the claims of the creditors and interest holders affected by the releases under the plan. *See Zenith,* 241 B.R. at 110; *see also In re Wash. Mut., Inc.*, 442 B.R. at 348-50.  This five-factor test is not a list of conjunctive requirements, nor is it an exhaustive list of considerations. *In re Master Mortgage Invest. Fund, Inc.,* 168 B.R. 903, 935 (Bankr. W.D. Mo. 1994). *See also In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013) (approving the releases although the third and fifth *Zenith* factors were not met where the record reflects overwhelming creditor support of the plan); *Spansion*, 426 B.R. at 143, n. 47 (referring to the *Master Mortgage* factors as "helpful in weighing the equities of the particular case after a fact-specific review").

Here, the *Zenith* factors is satisfied.  *First*, there is an identity of interest among the Plan Debtors and their non-Debtor Released Parties arising out of the shared "common goal" of confirming the Plan and implementing the Plan.[9]  Moreover, the Plan Debtors submit that, to the

---

[9] The *Zenith* Court granted the releases sought by the debtor, holding that the various released parties had an identity of interest on the basis that they were instrumental in formulating the plan of reorganization. *Zenith*, 241 B.R. at 110; *see also In re Tribune Co.*, 2011 Bankr. LEXIS 4128, at *153 (Bankr. D. Del. Oct. 21, 2011) (holding that the debtors and their secured lenders "share the common goal of confirming the [] Plan" and implementing the consummation thereof, thus giving rise to an identity of interest between those parties).

extent of any contractual indemnity such Released Parties may have against the Plan Debtors, they share an identity of interest with the Plan Debtors such that a claim against any of the Released Parties would be, in essence, a claim against the Plan Debtors. Therefore, any such claim, even if ultimately unsuccessful, would further deplete the estate's finite resources. Accordingly, the Released Parties all have an identity of interest with the Plan Debtors.

*Second*, the Released Parties all made important contributions to these chapter 11 Cases including, among other things, negotiating and formulating the Plan and agreeing to various compromises necessary to achieve consensus regarding its terms.

*Third*, the discharges, injunctions, releases, and exculpations are integral to the Plan as a whole, which will ultimately result in meaningful distributions to the Plan Debtors' creditors. The threat of litigation – and any litigation that ultimately came to fruition, no matter how baseless – would be a significant distraction to the Released Parties, the result of which would be the incurrence of potentially tremendous cost, time and labor, all of which would be better spent on developing the Plan Debtors' business post-emergence. Indeed, without the Releases, the Plan Debtors' officers and directors would be unable to focus the appropriate attention on exercising their fiduciary duties and returning the Reorganized Plan Debtors to a profitable and successful enterprise.

*Fourth*, the Plan Debtors' impaired creditors overwhelmingly accepted the Plan. As noted above, the Plan Debtors' Voting Classes are the only parties that are arguably affected by the release of any underlying claims or causes of action and have accepted the Plan and the Releases. Consequently, the fourth *Zenith* factor weighs in favor of granting the Debtors' Releases.

35

*Fifth*, through the Plan, Holders of Unsecured Claims Against Novation and Against NovaStar Mortgage will receive a meaningful distribution (paid in full), which, as set forth in the Liquidation Analysis, would not be available in a liquidation.

Accordingly, the Plan Debtors believe that, under the specific facts and equities of these chapter 11 Cases, the Debtors' Releases constitute a valid exercise of the Plan Debtors' business judgment and should be approved.

        D.       The Third-Party Releases Set Forth in Section 10.06
                        of the Plan Are Appropriate and Consistent with
                        <u>Established Precedent and Therefore Should Be Approved</u>

The Plan does not include non-consensual, third-party releases of Claims against the Released Parties. Rather, Section 10.06 of the Plan provides for consensual releases only by those Holders of Claims who (i) actually voted to accept the Plan and did not mark their ballots to indicate a refusal to grant such releases or (ii) are presumed to have voted to accept the Plan under section 1126(f) of the Bankruptcy Code. Thus, the releases in Section 10.06 of the Plan do not apply to any Person that exercised its election in accordance with Section 10.06 of the Plan to withhold granting a release in favor of those Released Parties by checking the appropriate box on its respective Ballot.

        1.      <u>Consensual Third Party Releases Are Permissible</u>

The Fourth Circuit has not directly addressed whether consensual third party releases are permissible. However, its opinions in *Behrmann v. National Heritage Foundation, Inc.*, 663 F.3d 704 (4th Cir. 2011), *National Heritage Foundation, Inc. v. Highbourne Foundation*, 760 F.3d 344 (4th Cir. 2014), and *Food Lion, Inc. v. S.L. Nusbaum Insurance Agency, Inc.*, 202 F.3d 223 (4th Cir. 2000), strongly suggest that, if the Court were to consider the issue, it would endorse such consensual releases. In addition, as discussed below, Judge Catliota of this Court has recently ruled that consensual third party releases are acceptable. Similarly, this Court has approve similar consensual releases.

Turning first to the Fourth Circuit opinions, *Behrmann* was not a case about consensual third party releases. Rather, in that case, the parties objecting to the Plan and contesting the third party release had not been granted the opportunity to consent to the release – or, indeed, even to vote on the proposed plan. *See Behrmann*, 663 F.3d at 711 (describing how objectors were barred from voting on the plan because they were unimpaired). Thus, the Fourth Circuit was not called upon to address, and did not address, the propriety of a release that binds only creditors who consent to it.

Importantly, however, in adopting the standard to be applied to nonconsensual third party releases, the *Behrmann* court cited favorably to the Second Circuit's decision in *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136 (2d Cir. 2005). *See Behrmann*, 663 F.3d at 712. In *Metromedia*, the Second Circuit noted that, despite the stringent requirements applicable to a non-consensual third party release, a consensual third party release was permissible. *See Metromedia*, 416 F.3d at 142 ("Nondebtor releases may also be tolerated if the affected creditors consent.").

Similarly, in *Highbourne* – a subsequent appellate decision arising out of the same operative facts as *Behrmann* – the Fourth Circuit cited favorably to the Seventh Circuit's decision in *In re Specialty Equipment Cos.*, 3 F.3d 1043 (7th Cir. 1991). *See Highbourne*, 760 F.3d at 350. In *Specialty Equipment*, the Seventh Circuit approved of a consensual release, noting that while "releases in their various forms do pose a rather knotty problem," the particular third party release at issue was acceptable because "each creditor could choose to grant, or not to grant, the release

37

irrespective of the vote of the class of creditors or interest holders of which he or she is a member."

*Specialty Equipment*, 3 F.3d at 1047.[10]

Finally, the Fourth Circuit's decision in *Food Lion* likewise suggests that it would not deem it appropriate to interfere with a consensual release of claims by a non-debtor. In *Food Lion*, a grocery store chain asserted a claim against a bankrupt builder who had failed to complete construction on several stores. During the bankruptcy, the store settled and released its claims against the debtor-builder. The store then brought a lawsuit (outside of bankruptcy) against the insurer who had provided a construction bond for the project as well as the insurance agent who had helped procure the bond. *See Food Lion*, 202 F.3d at 225-26.

In defending the suit, the insurance agent contended that because its liability was derivative of the insurer's, and the insurer's liability was derivative of the debtor, the store's release of claims against the debtor had operated as a release of claims against the insurance agent as well. *See Food Lion*, 202 F.3d at 226-27. In response to this argument, the grocery store cited section 524(e) of

---

[10] The Fourth Circuit in *Behrmann* also cited favorably to a case from the Sixth Circuit (*Class Five Nevada Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648 (6th Cir. 2002)) , a case from the Third Circuit (*Gillman v. Cont'l Airlines* (*In re Cont'l Airlines*), 203 F.3d 203 (3d Cir. 2000)) and a lower court case from within the Fourth Circuit (*In re Railworks Corp.*, 345 B.R. 529 (Bankr. D. Md. 2006)). *See Behrmann*, 663 F.3d at 712. The Sixth Circuit and Third Circuit cases addressed **non-consensual** releases. *See Dow Corning*, 280 F.3d at 653 ("The first principal issue presented here is whether a bankruptcy court may enjoin a **non-consenting** creditor's claims against a non-debtor to facilitate a reorganization plan under Chapter 11 of the Bankruptcy Code." (emphasis added)); *Cont'l Airlines*, 203 F.3d at 211 & 214 (noting appellants argued that plan "impermissibly releases and permanently enjoins their class actions against non-debtors without notice to individual class members and without consent or consideration," and holding that the "hallmarks of permissible non-consensual releases – fairness, necessity to the reorganization, and specific factual findings to support these conclusions – are all absent here"). Thus, like *Behrmann* itself, nothing in *Dow Corning* or *Continental Airlines* suggests that a consensual release is problematic. As for *Railworks*, in that case the bankruptcy court expressly noted that two creditors who had voted in favor of the plan at issue "consented to the terms of the Railworks Plan, including the third party injunction, and are bound thereby." *Railworks*, 345 B.R. at 537.

the Bankruptcy Code and argued that it could not possibly have released its claims against the insurance agent in the builder's bankruptcy because the insurance agent was not a debtor. *See id.* at 228 (citing 11 U.S.C. § 524(e)).

The Fourth Circuit rejected the grocery store's reliance on section 524(e), holding that "Section 524(e) does not preclude the consensual settlement of claims; it merely clarifies the effect of a discharge." *Food Lion*, 202 F.3d at 228 (emphasis added). The Court then quoted the following language from *In re Arrowmill Development Corp.*, 211 B.R. 497 (Bankr. D. N.J. 1997):

> [W]hen a release of liability of a nondebtor is a consensual provision . . . agreed to by the effected creditor, it is no different from any other settlement or contract and does not implicate 11 U.S.C. § 524(e). A voluntary, consensual release is not a discharge in bankruptcy.

*Food Lion*, 202 F.3d at 228 (quoting *Arrowmill*, 211 B.R. at 506).[11] While *Food Lion* was not a typical third party release case – in that the release occurred in the context of a settlement, not a plan – the principle it articulates is equally applicable in the plan context: non-debtors may voluntarily release other non-debtors without running afoul of the Bankruptcy Code.

In sum, the Fourth Circuit, on no less than three occasions, has cited to case law and principles suggesting that a creditor's voluntary decision to release a claim should be honored by the Bankruptcy Court. Moreover, in a case post-dating *Behrmann* (though predating *Highbourne*), Judge Catliota endorsed consensual third party releases, writing:

> It is well recognized that, where the application of the *Dow Corning* or other applicable factors leads to the conclusion that the third party releases should not be approved, the court can nevertheless approve the releases with the consent of the releasing parties. The rationale for allowing consensual third party releases is that the affected parties are bound by their consensual agreement.

---

[11] In the same paragraph, the Fourth Circuit also cited to the Seventh Circuit's opinion in *Specialty Equipment* which, as discussed above, approved a consensual third party release. *See Food Lion*, 202 F.3d at 228.

*In re Neogenix Oncology, Inc.*, 508 B.R. 345, 360 (Bankr. D. Md. 2014).

2.    The Third Party Release Is Consensual

Courts have held that an "affirmative agreement" from an affected creditor will render a release consensual. *See Zenith*, 241 B.R. at 111.  Although the parameters of what constitutes "affirmative agreement" are fact specific, courts have held that by simply voting in favor of a plan with non-debtor releases a creditor will be found to have affirmatively agreed to such releases.[12]

As noted above, the Plan goes one step further and provides the members of the Voting Classes with an express right to opt out of the releases. *See, e.g., Indianapolis Downs, LLC*, 486 B.R. at 305-06 ("yes" votes deemed consensual where creditors had opportunity with detailed instructions to opt-out).  Indeed, the release in Section 10.06 of the Plan does not apply to those creditors that received a Ballot if they elected, in accordance with Section 10.06 of the Plan, to withhold granting a release in favor of those Released Parties.  By checking the appropriate box, such creditor is deemed to preserve whatever direct (and therefore, non-derivative) claims it may have against the non-debtor third parties under applicable law.

Notably, Judge Keir recently approved a third party release with a similar "opt-out" mechanic in his confirmation order in *In re TEC-Gull Creek Inc*., Case No. 14-20311 (Bankr. D. Md. 2014). The third party release in the *TEC-Gull Creek* case was binding on "holders of Claims against and Interests in the Debtor and the Reorganized Debtor who (1) have affirmatively voted

---

[12] *See Spansion,* 426 B.R. at 144 ("a third party release may be included in a plan if the release is consensual and binds only those creditors voting in favor of the plan") (citation omitted); *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) ("to the extent creditors or shareholders voted in favor of the Trustee's Plan, which provides for the release of claims they may have against Noteholders, they are bound by that"); *Zenith*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of plan); *In re West Coast Video Enter., Inc.*, 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994) (stating that "each creditor bound by the terms of the release must individually affirm same, either with a vote in favor of a plan including such a provision or otherwise") (citation omitted).

40

for the Plan under Section 1126(f) of the Bankruptcy Code, and (2) did not mark their ballots to indicate their election to 'opt out' of the releases provided in Article 13 on their timely submitted ballots." *See TEC-Gull Creek* Confirmation Order ¶ J. [Dkt. No. 109].

Similarly, this Court confirmed the "opt out" consensual release in *Capital Trust Holdings, Inc.* Case No. 14-11952-DER (Bankr. D. Md. 2014). In *Capital Trust Holdings, Inc.*, the third party release provides that "holders are given the option to 'opt-out' of the third party release in this provision by checking the relevant "opt-out" box on their ballot." Case No. 14-11952-DER, Second Amended Chapter 11 Plan of Liquidation of Capital Trust Holdings, Inc. (f/k/a First Mariner Bancorp), Article XI, Section D (Dkt. No. 390) (Bankr. D. Md. 2014) (capitalization omitted).

Almost identically, the releases in the Plan provide that "all creditors may elect to 'opt out' of the following third party releases, by checking the 'opt out' box in the ballots received." *See* Plan at Section 10.06(b) (capitalization omitted).

Other similar third party releases – i.e., ones with an "opt-out" mechanic (as in this case) and even ones in which a simple vote in favor of the plan was deemed to constitute consent – have been approved by numerous other courts as well, including in the following cases:

- *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 271 (Bankr. S.D.N.Y. 2014) ("[T]he Court will permit releases with respect to any affected party that consented to grant the releases or may be deemed to have done so through its ability to 'check the box' on the Plan ballots. That includes those parties who voted in favor of the Plan and those who voted to reject the Plan but failed to opt out from granting the release provisions.") (citations omitted);

- *In re Indianapolis Downs, LLC*, 486 B.R. 286, 304-05 (Bankr. D. Del. 2013) (approving third party release applicable to holders of claims who "(i) affirmatively vote to accept or reject the Plan and do not opt out of granting the releases, (ii) are unimpaired pursuant to the Plan and therefore deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (iii) abstain from voting on the Plan and who do not otherwise submit a Ballot indicating their desire to opt out of the releases");

41

- *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1045 & 1047 (7th Cir. 1993) (approving as consensual a third party release that applied to all creditors voting in favor of the plan);

- *In re Conseco, Inc.*, 301 B.R. 525, 528 (Bankr. N.D. 1ll. 2003) (approving as consensual a third party release that applied to creditors "who agreed to be bound, either by voting for the Plan or by choosing not to opt out of the release");

- *In re Calpine Corp.*, Case No. 05-60200, 2007 WL 4565223, at *10 (Bankr. S.D.N.Y. Dec. 17, 2007) ("The Ballots explicitly stated that a vote to accept the Plan or abstention from voting without opting out of the releases each constitutes an acceptance and assent to the releases set forth in the Plan and directed parties to Article VIII of the Plan for further information about the release provisions. Thus, those Holders of Claims and Interests voting to accept the Plan or abstaining from voting and choosing not to opt out of the releases were given due and adequate notice that they would be granting the releases by acting in such a manner.");

- *In re Natural Prods. Grp. LLC*, Case No. 10-10239, 2010 WL 2745983, at *6 (Bankr. D. Del. Feb. 22, 2010) (approving third party release where "each holder of an impaired Claim against the Debtors was also given the opportunity to 'opt out' of such releases by making a timely written election by the Objection Deadline");

- *In re Almatis B.V.*, No. 10-12308 (Bankr. S.D.N.Y. Sept. 20, 2010) [Dkt. No. 444] (paragraph 55 of confirmation order and section 9.2.3 of plan authorizing third party release by claimants that "(a) voted to accept or reject the Plan and (b) did not elect (as permitted on the Ballots) to opt out of the releases"); and

- *In re NAMCO, LLC*, Case No. 13-10610 (Bankr. D. Del. Aug. 1, 2013) [Dkt. No. 371-1] (article 10.07(A) of plan authorizing third party release by "each creditor who votes to accept the plan and does not opt out of the plan release by completing item 3 of the applicable ballot").

With respect to Holders of Claims who are presumed to have voted to accept the Plan under section 1126(f) of the Bankruptcy Code, such Holders are receiving payment in full on account of their Claims as consideration for granting a release in favor of the Released Parties. *See Spansion*, 426 B.R. at 145 ("The unimpaired classes are being paid in full and have received adequate consideration for the release."). Accordingly, the Plan Debtors submit that the third-party releases in Section 10.06 of the Plan should be approved.

E.  The Exculpation Provision Set Forth in Section 10.07
of the Plan Are Appropriate and Consistent with
<u>Established Precedent and Therefore Should Be Approved</u>

1.  The Exculpation Is Well in Line With Those Routinely
<u>Approved by Courts in this District and Elsewhere</u>

It is well established that exculpation is appropriate for fiduciaries in a bankruptcy case, including the debtors' officers, directors, employees and professionals and a creditors' committee, its members and advisors. *In re PWS Holding Corp.*, 228 F.3d 224, 245-47 (3d Cir. 2000).

An exculpatory provision in a plan provides qualified immunity to parties that have made meaningful contributions to the debtor's bankruptcy proceeding. An exculpation is distinct from an unqualified non-debtor release in two important respects: first, it applies only to actions taken during the Chapter 11 case, and second, it does not shelter any exculpated party from liability for a variety of "bad acts," such as willful misconduct and fraud. *See In re A.P.I., Inc.*, 331 B.R. 828, 868 (Bankr. D. Min. 2005) (explaining distinction between exculpation and release). Thus, as courts have noted, an exculpation provision "does not affect the liability of [third] parties, but rather sets forth the appropriate standard of liability." *See PWS Holding*, 228 F.3d at 246-47 (emphasis added).[13]

In keeping with their limited scope and purpose, exculpation provisions similar to the one at issue here have become a common feature of chapter 11 plans. Such provisions are routinely approved where they are limited to post-petition actions and contain appropriate carve-outs for various "bad acts." *See, e.g., In re Neogenix Oncology, Inc.*, 508 B.R. 345, 361 (Bankr. D. Md.

---

[13] Notably, the Third Circuit's decision in *PWS Holding* – approving of an exculpation provision – came only several months after its holding in *Continental*, in which it had cautioned that non-consensual third party releases should be approved only in extraordinary circumstances. The Third Circuit noted that *Continental* – a release case – was not controlling on the separate issue of an exculpation. *See PWS Holding*, 228 F.3d at 247 ("Nothing in our recent opinion in Continental II is to the contrary.").

2014) (exculpation of post-petition actions excluding gross negligence and willful misconduct); *In re Granite Broadcasting Corp.*, 369 B.R. 120, 139-140 (Bankr. S.D.N.Y. 2007) (exculpation for acts in connection with the Chapter 11 case and the plan that excludes gross negligence and intentional misconduct is standard and is sufficiently narrow to be unexceptionable); *In re Enron Corp.*, 326 B.R. 497, 504 (S.D.N.Y. 2005) (exculpatory provisions that exculpate only negligent conduct that occurs during the bankruptcy case, relating to the plan or other aspects of the bankruptcy case, have been found to be "reasonable and customary and in the best interests of the estates"); *In re Nickels Midway Pier, LLC*, 2010 WL 2034542, at *14 (Bankr. D.N.J. May 21, 2010) (noting that exculpation language that limits claims to those related to a chapter 11 plan and do not eliminate liability but rather limit it to willful misconduct or gross negligence is permissible in a chapter 11 plan).

The recent case *In re TEC/Gull Creek, Inc.*, (among many others) contains exculpation provisions similar to the one at issue here. Case No. 14-20311 (DWK) (Bankr. D. Md. August 4, 2014).  Like the exculpation provision in *In re TEC*, the exculpation here is appropriately limited. First, it preserves claims resulting from "fraud, gross negligence, or willful misconduct."  Second, the Exculpation is limited to parties who have performed necessary and valuable services and made important contributions in connection with this Chapter 11 case.  For example, the Plan Debtors, the Disbursing Agent, HCS and any of their respective directors, officers and advisors successfully negotiated the terms of the Purchase Agreement that will provide an opportunity for creditors to receive meaningful recoveries on their claims.  Also, the Creditors' Committee and its attorneys, and the Plan Debtors' officers and directors and their attorneys, expended significant efforts in the Cases.

44

As a result, the exculpation provision set forth in Section 10.07 of the Plan is appropriate with respect to those Released Parties serving as officers, directors and employees of the Plan Debtors and members of the Creditors' Committee, as well as the Plan Debtors' and Creditors' Committee's respective professionals.

F.      Request for Authority to Consummate and Implement the Plan Immediately Upon the Entry of the Confirmation Order Notwithstanding 14-Day Stay of the Confirmation Order Imposed by Operation of Bankruptcy Rule 3020(E)

The Plan Debtors respectfully request that this Court direct that the Confirmation Order shall be effective immediately upon its entry notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e). Bankruptcy Rule 3029(e) provides that: "An order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). As such, and as the Advisory Committee notes to Rule 3020(e) states, "the court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately." *Id.* (emphasis added).

Under the circumstances of the Reorganization Cases, it is appropriate for the court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and permit the Plan Debtors to consummate the Plan and commence its implementation without delay after the entry of the Confirmation Order. The Purchase Agreement contemplates an expeditious chapter 11 process and requires that the Bankruptcy Court confirm the Plan on or before June 30, 2017. Waiver of the 14-day stay of the Confirmation Order may permit the Plan Debtors to proceed expeditiously toward emergence, and will also reduce the administrative and professional costs to be incurred in connection with these cases prior to emergence. The Plan Debtors submit that this relief is in the best interests of the Plan Debtors' estates and creditors and will not prejudice any parties in interest.

## CONCLUSION

The Plan complies with all applicable provisions of the Bankruptcy Code, including those provisions of section 1129(a) and 1129(b).  Moreover, the post-Effective Date provisions of the Plan, including, without limitation, the Plan Releases and Exculpation Provision, are consistent with applicable law and essential to the Plan Debtors' successful emergence from chapter 11.  For all of the foregoing reasons, the Plan should be confirmed.

Dated: May 30, 2017                                         Respectfully submitted,

/s *Adam H. Friedman*
Adam H. Friedman, admitted *pro hac vice*
Thomas J. Fleming, admitted *pro hac vice*
Jonathan T. Koevary
Lauren B. Irby
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
Tel: 212-451-2216
Fax: 212-451-2222
Email: AFriedman@olshanlaw.com

-and-

/s/ *Joel I. Sher*
Joel I. Sher, Bar No. 00719
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4277
Fax: 410-539-7611
Email: jis@shapirosher.com

*Counsel to the Debtors and Debtors in Possession*

46

4182019-6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of May, 2017, a copy of the *Memorandum of Law In Support of Confirmation of Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of (i) Novation Companies, Inc. and (ii) NovaStar Mortgage, LLC* was served on the parties listed below by electronic mail.

| | |
|---|---|
| Jason W. Harbour, Esquire<br>Nathan Kramer, Esquire<br>Tyler P. Brown, Esquire<br>HUNTON & WILLIAMS, LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA 23219<br>jharbour@hunton.com<br>nkramer@hunton.com<br>tpbrown@hunton.com<br>***Counsel for Creditors' Committee*** | Thomas C. Goodhue, Esquire<br>HUNTON & WILLIAMS LLP<br>2200 Pennsylvania Ave., NW<br>Washington, DC 20037<br>tgoodhue@hunton.com |
| John W. Weiss, Esquire<br>ALSTON & BIRD LLP<br>90 Park Avenue<br>New York, New York 10016<br>John.weiss@alston.com | Jonathan T. Edwards, Esquire<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA 30309<br>Jonathan.edwards@alston.com |
| Scott J. Pivnick, Esquire<br>ALSTON & BIRD LLP<br>The Atlantic Building<br>950 F Street, N.W.<br>Washington, D.C. 20004<br>Scott.pivnick@alston.com | |

***Attorneys for Taberna Preferred Funding I, Ltd. and Taberna Preferred Funding II, Ltd. (c/o TP Management LLC)***

Hugh Bernstein, Esquire
Katherine A. Levin, Esquire
OFFICE OF THE U.S. TRUSTEE
101 West Lombard Street, Suite 2625
Baltimore, MD 21201
Hugh.M.Bernstein@usdoj.gov
Katherine.A.Levin@usdoj.gov

Susan R. Sherrill-Beard, Esquire
U.S. SECURITIES AND EXCHANGE
COMMISSION
Office of Reorganization (Atlanta Regional
Office)
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382
sherrill-beards@sec.gov
*Counsel for U.S. Securities and Exchange
Commission*

Michael S. Etkin, Esquire
Andrew Behlmann, Esquire
Keara M. Waldron, Esquire
LOWENSTEIN SANDLER LLP
65 Livingston Avenue
Roseland, New Jersey 07068
metkin@lowenstein.com
abehlmann@lowenstein.com
kwaldron@lowenstein.com

Joel P. Laitman, Esquire
Christopher Lometti, Esquire
Michael B. Eisenkraft, Esquire
Daniel B. Rehns, Esquire
Robert Dumas, Esquire
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street
New York, New York 10005
jlaitman@cohenmilstein.com
clometti@cohenmilstein.com
meisenkraft@cohenmilstein.com
drehns@cohenmilstein.com
rdumas@cohenmilstein.com

Alan M. Grochal, Esquire
TYDINGS & ROSENBERG LLP
100 East. Pratt Street, 26th Floor
Baltimore, Maryland 21201
agrochal@tydingslaw.com

*Counsel for Interested Party, New Jersey Carpenters Health Fund*

Kyle J. Moulding, Esquire
MCCABE, WEISBERG & CONWAY, LLC
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
bankruptcymd@mwc-law.com
*Counsel for Creditor U.S. Bank National Association, as Trustee for J.P. Morgan
Mortgage Acquisition Trust 2006-HE3, Asset Backed Pass-Through Certificates, Series 2006-
HE3*

4182019-6

Irving E. Walker, Esquire
Cole Schotz P.C
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
iwalker@coleschotz.com

Mark Tsukerman, Esquire
Cole Schotz P.C
1325 Avenue of the Americas
19th Floor
New York, NY 10019
mtsukerman@coleschotz.com

*Counsel for Oberon Securities, LLC*

Matthew G. Summers, Esquire
BALLARD SPAHR LLP
300 El. Lombard Street, 18th Floor
Baltimore, Maryland 21202
summersm@ballardspahr.com

Paul Laurin, Esquire
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, California 90067
Paul.Laurin@btlaw.com

*Counsel for Butler America, LLC and Healthcare Staffing, Inc.*

Martin H. Schreiber, II, Esquire
Law Office of Martin H. Schreiber II, LLC
3600 Clipper Mill Road, Suite 201
Baltimore, Maryland 21211
Email: mhs@schreiber-law.com

James Gadsden, Esquire
Leonardo Trivigno, Esquire
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York
Email: bankruptcy@clm.com

*Counsel for The Bank of New York Mellon Trust Company, N.A., not in its individual capacity but solely in its capacity as Trustee under certain Indentures*

Brett H. Miller, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
brettmiller@mofo.com

*Counsel to Kodiak CDO I, Ltd. c/o EJF Investments Manager, LLC (f/k/a Kodiak Capital Management Company, LLC)*

Linda V. Donhauser, Esquire
Miles & Stockbridge P.C.
100 Light Street, 10th Floor
Baltimore, Maryland 21202
Phone: (410) 385-3684
ldonhauser@milesstockbridge.com

*Counsel for Deutsche Bank National Trust Company, solely in its capacity as trustee of the NovaStar Mortgage Funding Trust Series 2007-1*

/s/ Joel I. Sher
Joel I. Sher

49